HERBERT ROSENTHAL JEWELRY CORP., Respondent, *v.* ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant.

First Department, April 30, 1964.

*Norman S. Rein* of counsel (*Eugene Wollan* and *Eugene A. Leiman* with him on the brief; *Rein, Mound & Cotton,* attorneys), for appellant.

*Edgar Hills* of counsel (*Edwards & Gladston,* attorneys), for respondent.

BREITEL, J. P. At issue is whether certain interest, added in the recovery of the principal in an action at law, should be awarded to plaintiff insured or instead to defendant insurance company. The insurance company had obtained a recovery in the Texas courts on behalf of the insured under a loan receipt taken by it from the insured. A portion of the recovery represented the amount of the previous insurance payment to the insured. The Texas courts awarded interest. Plaintiff insured, in this action for declaratory judgment, was granted summary judgment awarding it the interest on the insurance payment portion of the recovery. Defendant insurer appeals claiming it should have been awarded the interest.

Plaintiff is a jeweler. It carried insurance on its merchandise with the insurer covering the cost of repair or replacement. It sustained a loss of $48,145.25 (at cost) in the burglary of jewelry in a Texas hotel. In short order, the insurer paid or advanced to the insured $48,145.25 to cover the loss. The

ensuing issues arise from the successful prosecution of a claim for the loss against the Texas hotel, based on the hotel's negligence.*

In the Texas action against the hotel the insurer sued initially for the replacement cost of the stolen jewelry, namely $48,000 ($48,145.25). While the action was pending, at the instance of insured the claim was increased by some $16,000 ($16,854.75) to cover the insured's loss of profit or the selling price of the stolen merchandise. It appears that under Texas law the resale price of the goods was recoverable. After trial and two appeals, over a five and one-half year period, judgment was recovered against the Texas hotel for $87,505.53. The recovery included interest on the two components of the loss, cost of replacement and loss of profit.

It was soon agreed between the insurer and the insured that the cost of the litigation should be prorated between the two components of the recovery, and that the interest should likewise be computed on a prorated basis.** Concededly, the insured was entitled to the interest accumulated on the loss of profits component. In dispute, however, is the accumulated interest on the original component in suit, namely, the $48,000 representing the replacement cost of the stolen merchandise, advanced or paid by the insurer to the insured in January, 1957, shortly after the loss occurred.

The insurer claims the interest because it had advanced or paid the money and the interest compensates for the deprivation of that money until the third-party wrongdoer has reimbursed for the loss. It points out that insured has had the principal sum all these years, and the interest would compensate it for nothing it has lost. Generally, it points to the "realities" of the situation and urges that the loan receipt is but a legitimate and recognized facade to permit the third-party action to be prosecuted in the name of the insured.

---

* *Statler Hotels* v. *Herbert Rosenthal Jewelry Corp.* (351 S. W. 2d 579 [Tex.]).

** Litigation expense: $31,370.30
    Net recovery in action: 56,135.23

    Texas judgment: $87,505.53

Included in the Texas judgment was interest of $22,505.53.

Paid to insured: $10,812.40 on loss of profits claim, after deduction of prorated litigation expense, plus $3,743.67 prorated interest, making total receipt of $14,556.07.

Paid to insurer: $30,885.42, after deduction of prorated litigation expense.

Balance of interest on the $48,000 claim at issue in this case: $10,693.74 (held in escrow).

The insured, conceding the "realities" of the situation, argues that the company-drawn loan receipt is determinative of the rights of the parties. On this basis, it argues that the loan receipt provides for the insurer to recover the $48,000 without interest from the net recovery. Hence, it says, the insurer is entitled to no interest on that sum, whether from the insured or the third party or from any other source. Since it is the titular owner of the recovery, and the insurer is not entitled to the interest, the added sum stays where it is — with the insured, the nominal plaintiff in the Texas action.

While the language of the loan receipt is, perhaps, unfortunate, it is not so clear in its meaning, its underlying original purpose, or in its verbal potency, to effect an unjust, unreasonable, and uncontemplated result between the parties. Given the ambiguity of the language in its references to "without interest" and "net recovery", the absence of any detrimental reliance by the insured upon the company-created ambiguities, the absence of any right of the insured to a windfall, and the compelling presence of an equitable right in the insurer to interest on its money, modern jurisprudence should not have any difficulty in avoiding "word talismanship".* The contrary would mean that the fiction of the loan receipt is permitted to behave as a monster, independently of the purpose of its creation, wreaking irrational havoc. The order and judgment in favor of plaintiff insured should be reversed and summary judgment granted to defendant insurer.

The proof of loss provided: "Upon payment hereunder I/we automatically assign to the said Insurance Company all my/our right, title and interest in the articles claimed for and subrogate to said Company any claim I/we may have against any third person or corporation, growing out of the loss of said articles, with power to enter suit in my/our name, but at the expense of said Insurance Company, and I/we pledge assistance in the prosecution of said subrogation. I/we also agree to turn over to said Insurance Company any such recovery which may be made, or reimburse said Company to the extent of the payment for such property which may be recovered."

In addition, the draft given to the insured to pay the insurance proceeds recited, over the indorsement, that the insurer was "subrogated" to all rights and causes of action against third parties for any underlying claims. The policy provided that

---

* CARDOZO, J., in *Wood* v. *Duff-Gordon* (222 N. Y. 88, 91): "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal."

the insured was obligated to give the insurer either an assignment of third-party claims or a loan receipt, at the company's option, to implement the subrogation of the insurer to such claims. The insurer elected, in this instance, to take a loan receipt which reads, in part, as follows: "BORROWED AND RECEIVED FROM ST. PAUL FIRE & MARINE INSURANCE COMPANY, St. Paul, Minn. the sum of Forty Eight Thousand One Hundred Forty Five and 25/100 Dollars, $48,145.25, as a loan, without interest, repayable out of any net recovery the undersigned may make from any vessel, carrier, bailee, or others upon or by reason of any claim for loss of or damage to the property described below, or from any insurance effected by any carrier, bailee or others on said property, and as security for such repayment, we hereby pledge to the said Insurance Company all such claims and any recovery thereon."

It will be readily noted that the several instruments involved, and there are four of them, alternate in characterizing the obligation to be made or the transaction which occurred, as an assignment absolute or as a transfer against loan receipt. The critical words, however, which resulted ultimately in the present dispute, are contained in the loan receipt to the effect that the insured "borrowed" the insurance proceeds, "as a loan, without interest, repayable out of any net recovery" the insured might make from any third party. Of course, it was not the insured which would prosecute the action, but the insurer in the name of the insured; nor was this, in truth, a loan.

Firstly, whatever the four documents in this transaction purported to express, it is perfectly clear that the purpose and effect of the transaction was for the insurer to pay the loss, the insured receive the proceeds of the insurance promptly, and for the insurer to be subrogated to the third-party claim to be prosecuted at its expense. A reading of the loan receipt alone might not disclose this, but the insurance policy, the proof of claim, and the draft indorsement, taken with the loan receipt, make the substance of the transaction perfectly clear. Thus made clear, the loan receipt transaction is not a banking or financing operation but a device for the payment absolute of an insurance loss, coupled with a fictional implementation to permit the insurer to sue in the name of the insured.

Indeed, before the applicable statute had been amended it had been held, under documents similar to those in this case, that a loan receipt represented an absolute payment by an insurer, and that the insurer, and not the insured, was the real party in interest (see *Slater Trucking Co.* v. *Maus,* 273 App. Div. 139; cf. *Sosnow, Kranz & Simcoe* v. *Storatti Corp.,* 269

App. Div. 122, affd. 295 N. Y. 675; see, generally, Fifteenth Annual Report of N. Y. Judicial Council, 1949, pp. 58–60. As to the present usage, see CPLR 1004; cf. former Civ. Prac. Act, § 210).

Secondly, the words " without interest " were meant to serve a purpose, but a limited one, in this context. It means that under the " loan form " of the transaction the insured is not obligated to pay interest out of its own purse, and also that any assets or claims to which the insured is entitled shall not be subject to the payment of interest. What happened here, namely, a recovery in excess of the loss paid, apart from interest on the recovery, is not unique. This may happen with frequency, either because of the mingling of covered and uncovered losses (as here) or because the insurance loss payment is less, for any other reason, than the amount of the recovery against the third party. In short, the insured's claim for the loss of profits and the interest accrued thereon may not be diminished by any interest charge for the loss payment.

Thirdly, the words " net recovery " in the loan receipt are ambiguous. It is not clear whether these words are referable exclusively to the loss payment or whether it embraces the entire lawsuit. It makes no sense that they should embrace the whole lawsuit. The addition of the loss of profits component was a proper, even necessary, accommodation for the insured; but it was basically a later addition to the principal suit in which the insurer was alone interested, despite the " loan receipt " fiction, to which it was extrinsic. It makes sense that the " net recovery " terminology refers only to the net balance after expenses of the litigation are allocated, leaving the words " without interest " to serve the qualified purpose discussed immediately above. It serves no other discernible meaningful purpose.

Fourthly, faced with what may be, in retrospect at least, faulty draftsmanship and simply a failure to anticipate the future situation which arose, a court is faced not so much with the function of interpreting language as the parties intended, for their intention was incomplete, but of construing the language to accord with what would have been the intention and the honorable agreement of the parties if their attention had been drawn to the possible events as they actually were to occur. This, of course, may be done only within the language of the agreements between the parties, but it also may not be avoided by attributing a false intention to ambiguous words just because an atomistic literalism with the dictionary as " a fortress "*

* Learned Hand, J., in *Cabell* v. *Markham* (148 F. 2d 737, 739, affd. 326 U. S. 404).

would account for the words. Moreover, such a construction does not involve a danger of misleading those who may rely on the written instruments, because the construction suggested is only applicable in the event there has been no justifiable reliance by or detriment to the insured. Thus, the fears of those who, perhaps rightly, cherish the integrity of the literal language of commercial instruments are quite irrelevant.

On this analysis, there is no valid ground, other than a forced application of what are at best ambiguous words, why the insurer should not receive the interest accrued on the money of which it had been deprived, and not the insured which has had its money all this time. Moreover, the interest, in commercial concept and in legal theory, arises out of the loss payment principal. That principal, in reality, belongs to the insurer, and in that sense adheres to it, unless clearly, and that means intentionally, contracted away. This is not interest paid directly or indirectly by the insured ("the borrower") which is all that is forbidden by the loan receipt, but it is paid by the third party with which, as to this portion of the recovery, the insured has long ago ceased to have concern and privity.

The kind of construction involved in this case is not new. Corbin has stated the situation best and his analysis in this area of contract law has been widely recognized. He has said: "When a court is filling gaps in the terms of an agreement, with respect to matters that the parties did not have in contemplation and as to which they had no intention to be expressed, the judicial process should not be called interpretation. To call it so is merely convenient camouflage, the purpose of which is to reach a just result without seeming to disregard old and moribund doctrines. The time eventually comes when the doctrine should carefully be restated as the process of actual decision has required, and the camouflage thrown aside. The most common sort of 'gap' that must be filled is found when, long after the parties have made their agreement, an event occurs that they did not foresee. In determining its legal effect, as the court must, the process may be called 'construction'; it should not be called 'interpretation'." (3 Corbin, Contracts, § 534, pp. 11–12.)

The Court of Appeals has, of course, followed such principles of construction in interpreting contracts, despite superficial difficulties presented by the literal language. Thus, where city bonds were callable "at the expiration of twenty years from the date of issue", the words were construed to mean that the bonds were callable at any time after the expiration of 20 years. Finding the literal meaning of the words unreasonable, the

court, per FULD, J., said: " Study of those decisions establishes only that the phrase can have no absolute or inalterable signification and that it takes on meaning and color from the context and setting in which it is found." (*City of Buffalo* v. *Strong & Co.*, 304 N. Y. 132, 138.) (Cf. Restatement, Contracts, §§ 230, 235, cls. [c], [d].)

And, of course, in interpreting or construing a contract the principal purpose of the parties is given great weight (Restatement, Contracts, § 236, cl. [b]; Corbin, *op. cit. supra,* § 545, p. 160; 10 N. Y. Jur., Contracts, § 194). This has been the teaching of the Court of Appeals too. In *Utica City Nat. Bank* v. *Gunn* (222 N. Y. 204) it was held that a guarantee to pay all loans and discounts or renewals could be applied to past loans which had been renewed, and in the absence of any new loans. Said the court (p. 208): " The proper legal meaning, however, is not always the meaning of the parties. Surrounding circumstances may stamp upon a contract a popular or looser meaning. The words loans and discounts are not so clear and certain that circumstances may not broaden them to include renewals. They often have that meaning in the language of business life. In the thought of business men, to renew a loan or discount is to make it over again, but none the less to make it. Especially is that so where, as here, a new note is given at each renewal, and interest paid. The triers of the facts must fix the sense in which the words were used in the contract now before us (*Kenyon* v. *Knights Templars & M. M. Aid Assn.,* 122 N. Y. 247; *Lamb* v. *Norcross Bros. Co.,* 208 N. Y. 427; *Rankin* v. *Fidelity Ins., Trust & S. D. Co.,* 189 U. S. 242, 253). To take the primary or strict meaning is to make the whole transaction futile. To take the secondary or loose meaning, is to give it efficacy and purpose. In such a situation, the genesis and aim of the transaction may rightly guide our choice (4 Wigmore on Ev. § 2470; Stephen, Digest of Law of Ev., art. 91, subds. 5 and 6)." (To same effect, see, e.g., *McGrail* v. *Equitable Life Assur. Soc.,* 292 N. Y. 419, 424; *Empire Props. Corp.* v. *Manufacturers Trust Co.,* 288 N. Y. 242, 248.)

It would labor the point unnecessarily to add further authority. Contracts are made by people about real transactions and they should be interpreted in accordance with their reasonable intentions at the time. So, too, should their reasonable expectations be respected as to that which was not contemplated but which should have been foreseen. If this case had involved, in truth, an interest-free loan, insured might be entitled to the disputed interest; but it did not — it involved a fictional device to pay the insured all to which it was entitled then or later, and

yet permit the insurer to sue in the name of the insured. No one denies this. No one's expectations go beyond this or fall short of these real facts.

Accordingly, the order and judgment granting plaintiff insured summary judgment should be reversed, on the law, and summary judgment should be granted to defendant insurer, without costs.

McNALLY, J. (dissenting). In an action for a declaratory judgment defendant-appellant St. Paul Fire and Marine Insurance Company appeals from an order granting summary judgment to plaintiff and the judgment thereon.

Defendant on February 18, 1956 issued to plaintiff a Jewelers' Block Policy insuring against loss by theft of articles of jewelry. Plaintiff sustained a loss on November 21, 1956. Proof of loss was made January 2, 1957 and on January 3, 1957 defendant paid $48,145.25.

The policy provides: "16. It is understood and agreed that if in case of loss the Insured shall acquire any right of action against any individual, firm or corporation for loss of or damage to the property insured hereunder, the Insured will, if requested by the Company, assign and transfer such claim to the Company or at the Company's option, execute and deliver to the Company the customary form of loan receipt, upon receiving payment for loss or advancement of funds in respect of the loss; and will subrogate the Company to, or will hold in trust for the Company, all rights and demands of every kind, respecting the same, to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name at the expense of the Company."

Plaintiff upon receipt of said payment executed on January 3, 1957 a loan receipt reading, in part: " BORROWED AND RECEIVED FROM ST. PAUL FIRE & MARINE INSURANCE COMPANY, St. Paul, Minn. the sum of Forty Eight Thousand One Hundred Forty Five and 25/100 Dollars, $48,145.25, as a loan, without interest, repayable out of any net recovery the undersigned may make * * * for loss of or damage to the property described below * * * and as security for such repayment, we hereby pledge to the said Insurance Company all such claims and any recovery thereon * * * we hereby appoint the officers of said Insurance Company and their successors, severally, our agents and attorneys in fact, with irrevocable power to collect any such claim and to begin, prosecute, compromise or withdraw, in our name, but at the expense of the said Insurance Company, any and all legal

proceedings which they may deem necessary to enforce such claim or claims ".

Defendant prosecuted an action in Texas in plaintiff's name against the hotel in Dallas, Texas, with which the jewelry had been deposited. In the Texas action plaintiff originally sought its cost of the jewelry, the amount therefor paid by the defendant. The complaint was amended to increase the amount sought to $65,000, representing the wholesale market value of plaintiff's jewelry. Final judgment was entered in the Texas action in the sum of $87,505.53. It is stipulated the components thereof are $48,145.25, plaintiff's cost; $16,854.75, plaintiff's loss of profit; and $22,505.53, interest from the date of loss to the date of judgment.

The parties were unable to agree on the division of the recovery. A partial distribution was made in accordance with a supplemental agreement dated May 22, 1962. It was therein stipulated that the legal fees and disbursements in the sum of $31,370.30 were to be paid; the balance of $56,135.23 being distributed as follows: to defendant, $30,885.42; to plaintiff, $14,556.07; the remaining sum of $10,693.74 to be held in escrow to await the order of a court of competent jurisdiction. Said legal expenses were ratably allocated to the amount of $48,145.25 advanced by defendant to plaintiff, the recovery for plaintiff's loss of profit, $16,854.75, and the total interest of $22,505.53.

Accordingly, plaintiff, the assured herein, has actually received to date on account of the loss a total of $62,701.32 ($48,145.25 from its insurer plus $14,556.07 out of the recovery) and is now seeking an additional $10,693.74, or a total of $73,395.06, as against a claimed gross loss, including its anticipated profit and interest of $87,505.53. Defendant, on the other hand, has actually received only $30,885.42 as against its actual advance of $48,145.25.

This action was commenced July 18, 1962 on the policy, the loan receipt and the agreement of May 22, 1962.

We are not concerned with the assessment of the legal expenses between the parties. This has been dealt with by the stipulation of May 22, 1962. The payment of $30,885.42 to the defendant was in satisfaction of its advance to the plaintiff of $48,145.25 after deduction of its share of legal expenses. If the defendant is to receive more, it is by force of the loan receipt or the terms of the policy.

The loan receipt limits repayment of the defendant of said sum " without interest ". Adverting thereto the opposing affidavit of defendant's claims examiner states:

" I believe that I am in a position to state to this Court the intention, not only of the St. Paul Fire and Marine Insurance Company but of the entire insurance industry, in incorporating that phrase in the standard form of loan receipt.

" Those words are used, purely and simply, to protect *the assured itself* from having to pay any interest *out of pocket*. They are intended to make it clear that, regardless of the fact that the payment to the assured is characterized as a loan, the assured will never be called upon to pay any interest on the ' loan ' out of its own funds. The words refer to the assured's obligation — or, rather, lack of it — *in the absence of any net recovery* out of which the ' loan ' may be repaid.

" Conversely put, the phrase in question has nothing whatever to do with the potential distribution of a recovery from a third party. If there is such a recovery, the insurer is to be made whole *out of the net recovery* to the extent of its advance, and the assured will receive only any excess recovery over that amount.

" The assured's claim that those words prevent the St. Paul from sharing in the interest recovered from the Hotel is a complete distortion of the language and purpose of the loan receipt, and a denial of common sense as well. Certainly no such meaning was contemplated when the document was executed. It is fair to infer that the assured never conceived such a far-fetched notion until long after the agreement was made — until, in fact, the time for distribution of the proceeds was at hand."

If the loan receipt had provided for repayment " with interest " instead of " without interest" all that defendant contends for might be granted. That repayment is not the personal obligation of the plaintiff and is to be effectuated solely from a recovery on the claim is clear from the terms of the receipt and the explanatory letter of the defendant described in the aforesaid affidavit. There is no ambiguity and we may not under the guise of interpretation recast the obligations expressed. (*Raleigh Assoc.* v. *Henry,* 302 N. Y. 467, 472–473.) Moreover, if there be ambiguity, it is to be resolved against defendant insurer. (*Greaves* v. *Public Serv. Mut. Ins. Co.,* 5 N Y 2d 120, 125.)

Defendant argues the loan receipt simply implements paragraph " 16 " of the policy. Thereby at defendant's option plaintiff agrees to assign the claim or execute the customary loan receipt " upon receiving payment for loss or advancement of funds in respect of the loss ", and subrogate the defendant to the extent of its payment or advance. It was within the competence of the parties to continue title in the plaintiff despite

the advance made to it by the defendant. We are not concerned with the motives of the parties. Defendant elected to preserve and continue plaintiff's title and may not at this time assert the contrary. (*Sosnow, Kranz & Simcoe* v. *Storatti Corp.*, 269 App. Div. 122, affd. 295 N. Y. 675.) The plaintiff at all relevant times was the owner of the claim underlying the Texas litigation. Plainly the interest thereon awarded is an incident of the ownership of the claim.

Defendant's reliance on its right of subrogation is misplaced. Plaintiff's claim in the Texas action was a single one for the wholesale market value of the jewelry and interest (see *Globe Ind. Co.* v. *Atlantic Lighterage Corp.*, 271 N. Y. 234). Defendant paid plaintiff its cost, which constituted only a part of the litigated claim. Subrogation did not arise until the plaintiff's claim was completely satisfied. (*McGrath* v. *Carnegie Trust Co.*, 221 N. Y. 92, 95; *Northwestern Fire & Mar. Ins. Co.* v. *Ley & Co.*, 238 App. Div. 255, affd. 264 N. Y. 427; *Sun Ins. Office* v. *Hohenstein*, 128 Misc. 870; 31 N. Y. Jur., Insurance, § 1620, p. 512.) Subrogation is not intended to place the insurer upon a footing of equality with the insured prior to full satisfaction of the insured's claim. (*Columbia Finance & Trust Co.* v. *Kentucky Union Ry. Co.*, 60 F. 794, 796, cited with approval in *McGrath* v. *Carnegie Trust Co., supra,* p. 95.)

Plaintiff's recovery here, inclusive of the sum advanced to it by defendant, is not in excess of plaintiff's claim as adjudicated in the Texas action. Hence, defendant has no right of subrogation in respect of the sum here involved.

The order and judgment should be affirmed.

STEVENS and STALEY, JJ., concur with BREITEL, J. P., McNALLY, J., dissents in opinion, in which STEUER, J., concurs.

Order and judgment granting plaintiff insured summary judgment reversed, on the law, and summary judgment granted to defendant insurer, without costs.