Leonard H. Sandler, J.
This nonpayment summary proceeding presents important and troublesome questions as to the construction and application of those paragraphs of the real estate board’s standard form of loft lease that concern the obligation of a tenant to install a sprinkler system when required for the lawful conduct of the tenant’s business.
In May, 1968 the landlord owner of a nine-story loft building, and the tenant, an off-set printer, entered into a four-year lease for the fourth floor of the building. The term was to commence on June 1,1968 and to expire on May 31,1972.
The annual rental was fixed at $3,000 for the first two years ($250 per month) plus water charges, and $3,300 for the last two years ($275 per month) plus water charges.
Nothing in the lease or any of the surrounding circumstances suggests that the space in question or the location of the building was of special or unique value to the tenant.
By letter dated July 1, 1970, the Fire Department informed the landlord’s attorney that a re-evaluation inspection had *613 resulted in the determination that this tenant’s business and that of the fifth-story tenant could not be lawfully conducted on the premises in the absence of a sprinkler system.
On September 2, 1970, in a letter by the landlord’s attorney, the tenant was informed (erroneously) that an order had been issued requiring the installation of a sprinkler system “ solely because of the nature of your tenancy ’ ’ and that the tenant was required “ at your sole expense to pay all the necessary expenses ”. The tenant was told that unless he responded so that arrangements could be made for the payment of the installation eviction proceedings would be brought.
Without any further attempt to communicate with the tenant, the landlord on September 17,1970 entered into a contract under which it obligated itself to pay $24,500 for a sprinkler system.
The present proceeding followed the tenant’s refusal to pay $12,500 in addition to the regular rent, that sum representing one half of the price fixed for the sprinkler system and one half of the landlord’s attorney’s fees in connection with the sprinkler contract.
The following provisions of the form lease are important to the determination of this ease.
(1) The tenant is required to comply at its own expense with all laws, orders and regulations of the various governmental units with regard to leased premises.
(2) More specifically, it is provided that the description of the tenant’s business is not a representation that it may be lawfully conducted. “ If alterations, including but not limited to a sprinkler system, are needed to permit lawful conduct of Tenant’s business or to comply with the certificate of occupancy, the same shall be made by and at the expense of the Tenant ”.
(3) In the event that the tenant defaults in fulfilling any covenant in the lease (other than by a failure to pay rent), the lease sets forth two quite distinct remedies for the landlord.
First the landlord is authorized to (a) serve a five-day notice of default upon the tenant, then (b) to serve a three-day notice of cancellation of lease if the tenant does not correct the default within the five-day period or diligently begin to do so, and thereafter (c) to resort to summary proceeding.
Significantly, the lease explicitly provides that the landlord may recover all expenses incident to the eviction, that the tenant’s rental obligation continues till the end of the lease term, that the landlord is not required to relet but may do so and recover the difference between the fixed rent and whatever lesser amount he may receive on reletting.
*614 The second kind of remedy provided in the lease, and the one under which the landlord chose to proceed, is detailed in paragraph 19. It specifies that if the tenant defaults as to any covenant required to be performed by the tenant under the lease, ‘ ‘ the landlord may immediately or at any time thereafter and without notice perform the same for the Tenant, and if the landlord makes any expenditure or incurs any obligation for the payment of money in connection therewith * * * such sums paid or obligations incurred * * # shall be paid by the tenant to the landlord ”.
The critical question is whether the lease provisions described above authorized the landlord to enter into a contract for the installation of a sprinkler system that obligated the tenant to pay as its share more than twice the rent remaining under the lease for a facility of minimal benefit to the tenant and of substantial benefit to the landlord. That the affirmative answer so strenuously urged by the landlord is offensive to one’s sense of fairness can hardly be doubted. I am persuaded' that it would also be a palpably erroneous construction of the lease.
The question of legal responsibility between landlord and tenant to pay for repairs ordered by public authorities under a variety of familiar lease provisions has been enormously productive of litigation. The results have varied with the presence of a host of different circumstances.
The cases in this area have been comprehensively collected in an annotation at 22 ALB 3d 521, and no useful purpose would be served by a detailed review.
The guiding principle was expressed quite clearly by the New York Court of Appeals in Cohen v. E. & J. Bass Inc. (246 N. Y. 270, 277). “ We seek the intention of the parties, not as much from the letter of the lease as from a reasonable construction of their agreement, having in mind the rent payable, the terms of the lease, the nature of the construction required, the relative benefit thereof to the respective parties, and what the parties had in contemplation when they executed this agreement.”
In this case, the ‘1 intention of the parties ’ ’ was quite plainly to safeguard the landlord from being compelled to spend large sums of money for a sprinkler system in order to avoid criminal sanctions in the event a violation was found to exist. That purpose was more than adequately achieved by the provisions of paragraphs 17 and 18 that enabled the landlord in the event of a default to terminate the lease in eight days through two notices, that guaranteed reimbursement for all expenses in connection with eviction, and that assured the receipt of no *615 less than all the rent due until the expiration of the lease term, while leaving the landlord free to secure higher rentals from others if that could be arranged.
It was clearly not “ the intention of the parties ” to permit the landlord to seize upon a violation as a golden opportunity to improve significantly the value of his property without any cost to himself and at the entire expense of a tenant whose limited interest in the property would make any such expenditure an economic absurdity. That is precisely what the landlord has undertaken to do and has asked, this court to countenance.
It is surely important to an understanding of the intended scope of paragraph 19 to observe that it permits the landlord to act without notice.
Quite likely, the paragraph contemplated an emergency situation requiring immediate action that could not reasonably await negotiation or discussion, as well as a default which could be corrected with limited expenditures of time and money.
Another approach, leading to similar results, would be the application to the general language of paragraph 19 of the distinction between structural repairs and ordinary repairs that the courts have made in interpreting clauses requiring the tenant to comply with governmental orders. (See Younger v. Campbell, 177 App. Div. 403; Holden v. O’Brien, 209 App. Div. 266, affd. 240 N. Y. 560; Mayfair Merchandise Co. v. Wayne, 415 F. 2d 23.) As applied in this context, the paragraph would be interpreted to authorize the landlord to make for the tenant’s account ordinary repairs, but not alterations of a structural character.
It is not necessary here to define in detail the kind of action that the landlord is permitted to take without notice to the tenant under paragraph 19.
It suffices to say that it was not ‘ ‘ the intention of the parties ” that this landlord could impose on the tenant without notice a financial obligation far exceeding the total remaining rent for a facility of prime benefit to the landlord. (Cf. Cohen v. E. & J. Bass Inc., supra; Zeliner v. Linn, 59 N. Y. S. 2d 654.)
I am confirmed in this result by my conviction that if construed to sustain the landlord’s position the paragraph would be unconscionable, and unenforceable as such. While that concept has its contemporary origin in section 2-302 of the Uniform Commercial Code, its applicability to leases has been clearly suggested by high authority (Tai On Luck Corp. v. Assunta Cirota, 35 A D 2d 380). I am myself persuaded that the power of Judges to declare unenforceable unconscionable clauses will *616 increasingly prove to be a constructive remedial device against the more flagrant excesses that attend situations in our complex society where inequality of bargaining position is ruthlessly exploited by the stronger party.
For the reasons set forth above, that problem need not be faced here.
Judgment for respondent without prejudice to a new proceeding directed solely at recovery of the regular rent stipulated in the lease.