OPINION OF THE COURT
Salvatore T. De Matteo, J.
Plaintiff tenants move for a temporary restraining order against defendant landlords to enjoin defendants "from terminating or interfering with the normal operation of the electric *1010 current” serving plaintiffs’ law office and "from terminating the plaintiffs’ lease”.
The undisputed facts as gleaned from the papers before the court are that plaintiff Philip F. Di Costanzo and his law firm occupied the 28th floor of premises 66 Court Street for over 35 years under various leases. The subject lease dated July 30, 1973 defining the rights of the parties in this action was entered into between plaintiffs and defendants’ predecessor in interest. The significant portions thereof are paragraphs "36” providing for the right of plaintiffs to extend the term of the lease for a period of five years, if at the time of the exercise of such right plaintiffs are "in good standing under all of the terms and conditions of this lease”, a "Consumer Price-Index” rider providing for increase or decrease of the rential depending on the buying power of the dollar as establsihed by the "price-index”, and an electric current rider.
The adversary differences between the parties arose upon defendant Court Tower Corp. (Court Tower) instituting in April, 1978 a summary proceeding for nonpayment of rent in the sum of $11,549.20 and plaintiffs’ interposition in said proceeding of an answer containing counterclaims and a set off for partial eviction. The court, in that proceeding, in a decision dated July 24, 1978, found that only the sum of $10,156.68 was due Court Tower as rent and additional rent, and then granted to plaintiffs the sum of $1,231.20 on their set off of partial eviction. Plaintiffs thereupon, by letter dated July 26, 1978, forwarded to Court Tower "pursuant to the decision and judgment” their check in the sum of $8,925.45 and at the same time and as part of the letter to Court Tower informed that plaintiffs were exercising their right "pursuant to paragraph 36 of the lease” to extend the term of their lease for a further period of five years. Court Tower, by letters dated the same date and on the following day, informed plaintiffs that "the landlord hereby elects to discontinue serving your premises with electric current and hereby gives you 30 days notice of said termination.” On August 2, 1978, Court Tower acknowledged receipt of plaintiffs’ check but stated that "we don’t agree that it is the proper amount due us, and therefore we are depositing this check under protest.” In addition, said defendants stated that "we do not believe that you are in 'good standing’, we do not * * * consider valid, your exercise of such option. We therefore expect that you will *1011 move at the expiration of your present lease.” (The expiration date was August 31, 1978.)
Not denied by defendants is that plaintiffs were the only tenants who were given notice of discontinuance of submetering electric current service and to make their own arrangements with "Con Edison” for direct service and that plaintiffs would, of necessity, be required to have installed separate "risers, conduits and wires” at an approximate cost of $10,000; nor do defendants deny plaintiffs’ charge that defendants’ precipitate action was motivated by plaintiffs’ defense of defendants’ nonpayment of rent proceedings.
Defendants’ position, as taken in their opposing papers, is one of justification of their exercise of their legal rights, as construed by them, irrespective of the hardship imposed on plaintiffs. Defendants’ contention and cited authorities are best expressed, in capsule, that hardship is not synonymous with unconscionability. Defendants urge that the burden imposed by the electric current rider is set forth in language negotiated by plaintiffs with defendants’ predecessor in interest and was approved and accepted by plaintiffs, who are experienced legal practitioners.
Before considering the issue of unconscionability of the electric current rider, the court will first resolve defendants’ declaration that plaintiffs have failed to validly exercise their right to extend the term of their lease beyond August 31, 1978. Such issue, if alone, should best be determined in a landlord-tenant proceeding in the Civil Court of the City of New York, but as it is interwoven with the electric current service and the continued proper use of plaintiffs’ office, this court, sitting in equity, will retain jurisdiction in order that full relief, if warranted, may be granted.
Defendants apparently accept plaintiffs’ factual narration and letter exhibits as to plaintiffs’ exercise of their right to extend the term of the lease, including defendants’ letter exhibit of August 2, 1978, wherein defendants’ in conclusory terms, stated that plaintiffs were not in good standing at the time of their exercise of the option and thus no valid exercise was made. This court finds that plaintiffs have sufficiently established "the likelihood of [their] ultimate success on the merits” of their extension of the term of the lease beyond August 31, 1978 (Shelborne Beach Club v Hellman, 49 AD2d 741) and more important that the status quo of the parties be *1012 maintained "until a decision is reached on the merits.” (Tucker v Toia, 54 AD2d 322, 325.)
The interpretation of the electric current rider presents a more thorny issue. The point of disagreement between the parties is the construction that each places upon the following clause: "Landlord may discontinue any of the aforesaid additional service for additional equipment upon thirty (30) days notice to Tenant without being liable to Tenant therefor or without in any way affecting this lease or the liability of Tenant hereunder or causing a diminution of rent and the same shall not be deemed to be a lessening or dimunution of services”. Defendants contend that said clause read in the context of the entire rider gives to the landlord a clear right to discontinue submetering electric current service to a tenant. The fact that such obligation to change over to direct service with "Con Edison” is onerous and unduly costly for tenants occupying the upper floors in the building does not affect nor detract from the validity of a tenant’s undertaking. The authorities cited by defendants correctly state the rule that a bargain entered into without fraud, overreaching and on equal footing is enforceable even though it results in a burdensome obligation to the tenant.
Plaintiffs, on the other hand, construe the words "discontinue any of the aforesaid additional service for additional equipment” as words of limitation to a discontinuance of service only as to "additional equipment” and not to the electric equipment that was present at the time of the execution of the lease. Any other construction would, as plaintiffs contend, render the obligation imposed on tenant unconscionable. Plaintiffs urge upon the court numerous authorities dealing with the statutory declaration of unconscionability as to clauses in leases and landlord overreaching.
This court does not accept the narrow view of either party adapted to their respective desired results. Each overlooks the broad purpose of intendment of the electric current rider which appears to be in standard form. The parties at the time of the execution of the lease recognized the existent building facilities, conditions and services being furnished to tenants. They bargained on the use of those facilities to the extent that the continued use thereof shall be feasible during the term of the lease. It was to the interest of both parties that no costly changes be made and that the landlord may have the benefit *1013 of its electric current submeter installations. The parties may be assumed to have reasonably contemplated that a law may be enacted barring submetering or that the continued maintenance and operation of the submetering facilities would become impractical, economically unfeasible or disadvantageous to landlord, and that a complete change-over to direct electric current service by "Con Edison” would be necessary for all the tenants, not merely for one tenant. It is inconceivable that a landlord will wish or permit each of more than 30 tenants (the court judicially acknowledges that not all tenants in the premises occupy full floors and that there are far more than 30 tenants in the building) to install separate "risers, conduits and wires”. Nor is it conceivable that the parties so bargained that the landlord may, out of sheer spite, vengeance, or retaliatory motive, require a tenant having a short-term lease or a remaining short term incur a costly installation far beyond the rental payable to landlord or which will not be a valuable beneficial improvement to the premises. It is fair and proper to visualize that should a complete change-over become necessary and feasible that the over-all cost to all tenants of the building would be within reasonable limits based on a joint use of existing "wires and conduits, to the extent available, suitable and safely capable to be used for such purpose” and as may have to be supplemented or replaced in whole or in part.
While the language of the rider does not clearly spell out "its underlying original purpose [it may not] in its verbal potency * * * effect an unjust, unreasonable and uncontemplated result between the parties * * * [F]aced with what may be, in retrospect at least, faulty draftsmanship and simply a failure to anticipate the future situation which arose, a court is faced not so much with the function of interpreting language as the parties intended, for their intention was incomplete, but of construing the language to accord with what would have been the intention and the honorable agreement of the parties if their attention had been drawn to the possible events as they actually were to occur. This, of course, may be done only within the language of the agreements between the parties”. (Rosenthal Jewelry Corp. v St. Paul Fire & Mar. Ins. Co., 21 AD2d 160, 163, 165, affd 17 NY2d 857.)
This court will not so interpret the language of the rider so as to create a nonbeneficial unduly burdensome obligation on the one hand and a weapon of retaliation on the other hand *1014 which neither of the parties intended, contemplated or bargained for.
Ascertaining, retrospectively, the intention of the parties, the words of the rider do not become the magic talisman of pictography as do "the rent payable, the terms of the lease, the nature of the construction required, the relative benefit thereof to the respective parties, and what the parties had in contemplation when they executed this agreement.” (Cohen v E.&J. Bass Inc., 246 NY 270, 277; see, also, Ben’s Lbr. Yard v Evador Holding Corp., 38 Misc 2d 157, affd 20 AD2d 758; SKD Enterprises v L & M Offset, 65 Misc 2d 612; Tai On Luck Corp. v Cirota, 35 AD2d 380, app dsmd 29 NY2d 747; and Douglas Manor House v Wohlfeld, 66 Misc 2d 265, 267, wherein the court stated "good faith must be read into the clauses of a lease — a landlord may not be permitted to victimize a tenant by an unconscionable invocation of the power given him in the lease.”)
This court holds that the construction of the rider urged upon it by defendants was conceived with retaliatory motive and was not in the contemplation of the parties to the lease nor the agreement consummated by them nor one that permits of enforcement by a court of equity. Moreover, viewing the landlord and tenant relationships in our present day enlightened concepts and within the declared legislative policy on "Leases — Defense of Unconscionability” as expressed in the message submitted by Governor Carey for the enactment of section 235-c of the Real Property Law (NY Legis Ann, 1976, p 406) and the authorities construing said section, this court favors the expansion of the doctrine of unconscionability to include "judicial policing against unconscionable results without strained construction of legal principles.” (Pine Top Assoc. v Hirsch & Sons Deli World, 92 Misc 2d 470, 472.)
This court is making no determination on the merits as to either the validity of plaintiffs’ exercise of their right to extend the term of the lease nor the underlying facts of defendants’ notice of discontinuance of electric current submetering service to plaintiffs nor the necessity for such discontinuance of service as relates to plaintiffs and to the other tenants in defendants’ premises. However, it is incumbent upon the court to maintain the status quo of the parties pending a trial of the issues, particualrly when no urgency, harm or prejudice has been claimed by defendants and the balance of equities dictate the continuance of electric current *1015 submetering service. The ultimate success on the merits of plaintiffs’ cause of action has been well established, although for the purposes of retaining the status quo of the parties "grave doubts regarding the likelihood of plaintiffs’ success on the merits” is no bar to granting a preliminary injunction (Schlosser v United Presbyt. Home at Syosset, 56 AD2d 615).
Accordingly, plaintiffs’ motion is granted.
Settle order.