Hon. Barbara Blum Statutory Chairperson Community Facilities Project Guarantee Fund
This is in response to the request of David P. Glasel, Counsel to the Community Facilities Project Guarantee Fund ("Fund"), for an opinion on the following question:
 "Is the Southwest Area Day Care Center, Inc., a Not-for-Profit Corporation [created under the Youth Facilities Act], obligated to pay interest on its loan from the Housing Finance Agency, and if so, in what amount?"
The opinion request states that the Fund has guaranteed, with the full faith and credit of the State of New York, the $655,000 principal amount indebtedness of the Southwest Area Day Care Center, Inc. ("Center") to the Housing Finance Agency ("HFA"), an indebtedness (evidenced by a mortgage note and mortgage hereinafter discussed in detail) contracted to obtain funds for the construction of the Center; that the HFA has been billing the Center at an interest rate of 7.03% per annum (plus 1.75% as a management fee); that the Center has not made payments consistent with this schedule; and that — if the Center is liable for payment of such interest — the default will become the obligation of the Fund, as guarantor.
The mortgage evidencing the indebtedness of the Center to the HFA, dated February 26, 1974, refers to a contemporaneously executed mortgage note for the terms of payment of principal and interest due thereunder. The mortgage note provides (in pertinent part):
 "The Maker further covenants and promises to pay the principal sum due hereunder at such times and in such amounts as shall be required by the Payee to pay the principal of the aforesaid Bonds and Notes issued by the Payee to obtain the funds with which to make the aforesaid loan to the Maker * * * and to pay interest on the principal sum due hereunder at the same rate or rates of interest and in the same amount or amounts as the Payee is required to pay on the Bonds and Notes issued by the Payee to obtain the funds with which to make the aforesaid loan to the Maker as such interest becomes due and payable * * *."
We are advised by the HFA that it obtained the funds to finance the project from a 1974 sale of Youth Facilities Project Bond Anticipation Notes ("BANs") but that, because of the State's 1975-76 fiscal crisis, the HFA was subsequently Unable to market permanent bonds. However, on March 15, 1976, the State appropriated fund to the HFA (L 1976, c 36) in order to retire outstanding BANs for certain of the HFA's programs, including the Youth Facilities Program pursuant to which the loan to the Center was made. Under the terms of the Appropriations Act, funds could not be made available to the HFA until, among other things, the HFA entered into:
 "a written agreement with the director of the budget providing for repayment by such agency [HFA] to the State of New York of an amount equal to the total amount expended for the State from this appropriation, on terms which may include (i) the payment of interest thereon at a rate per annum to be determined by the director of the budget, upon recommendation of the State Comptroller * * *".
On March 15, 1976, the HFA entered into a Repayment Agreement with the Director of the Budget, which provided, in part, that:
 "1. The Agency [HFA] shall repay to the State an amount equal to the total amount expended by the State * * * pursuant to the Appropriation Act, with interest thereon, if any, at such rate * * * as the Director may determine, upon recommendation of the State Comptroller.
 2. Repayment by the HFA shall be made from monies paid to the HFA by obligors in the Programs * * *."
By letter dated August 5, 1976, the Deputy Director of the Budget advised the HFA that the interest rate on the State loan had been set at 7.03 percent per annum.
The HFA further adivses that it subsequently entered into Mortgage Modification Agreements with projects in the Youth Facilities Program to reflect the change in financing mechanisms. All projects, except for the Center, have executed the Agreements. By letter dated December 22, 1977, Henry Lehman, President of the Center, advised the HFA that although the Directors of the Center "recognize our obligation to pay the interest on the loan," due to fiscal problems experienced by the Center they "will not be able to pay the full amount of interest and principal for 1978," and therefore "believe[d] it would be misleading for us to sign a mortgage modification agreement at this time * * *".
The question posed by you arises from the fact that the mortgage note, while clearly providing for the payment of interest, requires payment of interest (and also principal) at the same rate and in the same amount as the HFA is required to pay on its bonds and notes issued to obtain the funds loaned to the Center, but, in fact, no such bonds and notes were issued (instead, HFA was compelled by the private market situation to obtain the funds involved by an interest-bearing loan from the State of New York). Thus, resolution of your question depends on whether, pursuant to the mortgage note, the issuance of bonds and notes by the HFA is a condition precedent to the Center's obligation to pay interest on its loan.
The basic rules applicable to the instant situation are well established. To make a provision in a contract (a mortgage note is construed in the same manner as a contract [Brayton v Pappas, 52 A.D.2d 187
(4th Dept, 1976)]) a condition precedent, it must appear from the instrument that the parties intended the provision to so operate (Spear'sSons Co. v Casein Co., 122 App. Div. 22 [1st Dept, 1907]). To ascertain the intent of the parties as to what rights and obligations they intended to create, we must look to "the words they used in their written agreement, with parol evidence admissible to clarify ambiguities, if any, under recognized canons of construction." (Surrey Strathmore vDollar Sav. Bank, 36 N.Y.2d 173, 176 [1975].) Where a future situation not contemplated by the parties arises, the language of the contract is to be construed "to accord with what would have been the intention and the honorable agreement of the parties if their attention had been drawn to the possible events as they actually were to occur." Rosenthal Jewelryv St. Paul Fire Ins., 21 A.D.2d 160, 165 (1st Dept, 1964), affd without opn 17 N.Y.2d 857 (1966).
Analyzing the facts in light of the foregoing rules, it is clear from the provisions of the mortgage note above quoted that the parties intended that the Center pay interest on its loan but that the interest was limited to the amount of interest that the HFA had to pay for the money that it had to borrow to obtain the funds needed to make the loan to the Center. Unquestionably, the drafters of the mortgage note tied the amount of interest to HFA bonds and notes because, under the circumstances as then foreseen, that was the way that HFA tapped the money market at the lowest cost. Likewise, the State's method of solving HFA's problem was structured to provide it with funds at an interest rate presumably tied to the cost of State borrowing at the time, a method consistent with the original limitation on cost spelled out in the mortgage note.
Construing the language of the mortgage note in accordance with what the parties would have intended had they anticipated the future event which occurred, there can be no doubt that, in such event, it would have continued to be the intention of the parties that the Center pay interest to the HFA at the same rate and at the same times as the HFA was required to pay to obtain the funds loaned to the Center. The mortgage note provision pertaining to payment of installments of principal likewise supports this conclusion. That provision, precisely like the provision pertaining to interest, requires the Center to make principal payments as they become due on the Bonds and Notes issued by the HFA to obtain the funds involved. Thus any interpretation that the parties intended HFA issuance of bonds and notes as a condition precedent to payment of interest would require the same interpretation as to payments of principal. In the present context of a mortgage loan between parties dealing at arm's length, such an interpretation — that the parties intended that repayment of both principal and interest would not be made unless the funds loaned were obtained in a specified manner — would be untenable (see New York State Thruway Auth. v Hurd, 25 N.Y.2d 150
[1969]). Such an interpretation is also untenable because the HFA would then be in the position, in the circumstances which here arose, of making a gift of its funds although the law pursuant to which it entered into this transaction with the Center (Private Housing Finance Law, §§ 44
[9] and 42 [6-e]) authorized it only to make a mortgage loan.
Giving effect to "the substantial intent of the parties", as we must do (Central Trust Co. v Sheahen, 66 A.D.2d 1015 [4th Dept, 1978]), it must be concluded that the mortgage note provision pertaining to issuance of bonds and notes by the HFA is not a condition precedent to payment of interest by the Center to the HFA. As stated in Rosenthal Jewelry v St.Paul Fire Ins. Co., supra (at p 167):
 "Contracts are made by people about real transactions and they should be interpreted in accordance with their reasonable intentions at the time. So, too, should their reasonable expectations be respected as to that which was not contemplated but which should have been foreseen."
The foregoing conclusion is buttressed by the fact that the Board of Directors of the Center and its Counsel have not only made no objection to HFA's billing of interest at the rate of 7.03% per annum but have expressly acknowledged the Center's "obligation to pay the interest on the loan" (Letter dated December 22, 1977, from Henry Lehman, President of the Center, to the HFA). This is persuasive evidence of the intent of the Center when it executed the mortgage note. Red Seal Pub. v GilbertonPub., 67 A.D.2d 339 (1st Dept, 1979).
Further, our courts have held that where there is simply a failure to anticipate the future situation which arose, language of an agreement will not be interpreted to "effect an unjust, unreasonable and uncontemplated result between the parties" (Rosenthal Jewelry v St. PaulFire Ins., 21 A.D.2d 160, 163 [1st Dept, 1964], affd 17 N.Y.2d 857 [1966]supra; Di Costanzo v Ct Tower Corp., 96 Misc.2d 1009, 1013 [Sup Ct, Kings Co, 1978]).
Based on the above, it must be concluded that the mortgage note provision pertaining to issuance of bonds and notes by the HFA and payment of (principal and) interest by the Center, at the same times and rates as provided by such bonds and notes, is not a condition precedent to payment of interest by the Center but merely expresses the parties' intention that the Center pay interest at such times and rates as the HFA shall be obligated to do so in order to obtain the funds involved.
Since, as hereinbefore discussed, the HFA has become obligated to the State of New York to pay interest on the monies involved in the amount of 7.03% per annum, it follows that the Center is obligated to pay that same rate of interest to the HFA, at the same times such interest becomes due from the HFA to the State.