EDIE LERNER, Appellant, v PHYLLIS LERNER, Respondent.

Second Department, November 17, 1986

APPEARANCES OF COUNSEL

*Frederic Z. Konigsberg* for appellant.

*Harris L. Kimball* for respondent.

## OPINION OF THE COURT

WEINSTEIN, J.

The case before us presents the novel issue of whether a preretirement death benefit of a corporate pension plan falls within the scope of a separation agreement provision pertaining to insurance, which provision would have required the inclusion of the decedent's two children as beneficiaries. The plaintiff became the ex-wife of James Lerner, now deceased, in April 1978 pursuant to a final judgment of divorce. Incorporated but not merged in that judgment is the separation agreement entered into between those parties on February 26, 1976. The plaintiff's claim, asserted on behalf of her two minor children,* is predicated upon a rider to the separation agreement, the interpretation of which we are called upon to undertake. On the facts of this case, we conclude that the subject provision of the separation agreement is most properly construed to include the preretirement death benefit, which was admittedly received by the defendant, with the result that the two children of the plaintiff and the decedent are each entitled to their proportionate share of it.

The genesis of the underlying dispute is the following language set forth as a rider to the 1976 separation agreement and executed by both the plaintiff and the decedent.

"In addition, the Husband agrees to maintain his $50,000.00 life insurance policy currently in effect with the Wife being named as irrevocable beneficiary in the sum of $15,000.00 and the children being named as irrevocable beneficiary *[sic]* in the sum of $35,000.00, and such policy will not be cancelled by

---

* Both children were minors at the time of decedent's death. The older child reached 18 shortly after the instant action was commenced.

an overt act of the Husband. The Husband will so notify the Wife if the policy is terminated.

"As to any and all future insurance that the Husband may take out during his lifetime or may be given him by any firm that he may work for shall be limited as to beneficiaries as follows: the two (2) children, namely ADAM LERNER and ERIC LERNER, shall be included as irrevocable beneficiaries under these policies to be entitled to an equal share each with any other beneficiaries the Husband may therein name".

The agreement unequivocally provided that it would survive any ensuing decree or judgment of divorce and be forever binding and conclusive upon the parties.

A final judgment of divorce was subsequently entered by reason of the couple's having lived separate and apart pursuant to the terms of the written separation agreement for a period in excess of two years. The decedent married the defendant some 11 months later. He died on March 18, 1984. As of that date, the defendant was the sole named beneficiary of a group life insurance policy issued by the decedent's employer in 1974 and of a preretirement death benefit which was included in the pension plan provided by the Hummelwerk Pension Trust, an employee benefit plan. Hummelwerk administered the pension plan on behalf of decedent's employer, Goebel Collector's Club. The plan was funded through a group life insurance policy owned by Hummelwerk. The decedent became eligible to participate in the pension in December 1976. Both the policy funding the plan as well as the $50,000 group life insurance policy of which the defendant was the sole named beneficiary were issued by the United States Life Insurance Company. It bears noting at this juncture that the latter policy was totally distinct from the $50,000 life insurance policy mentioned in the first paragraph of the rider to the separation agreement. Although the $50,000 group life insurance policy of which the defendant was, at the time of the decedent's death, the sole named beneficiary, predated the separation agreement, the plaintiff did not know of its existence at the time of execution of the separation agreement. The $50,000 policy which was the subject of the rider was duly maintained as provided for therein and is not at issue in this action.

On June 21, 1984, the defendant received a check from Hummelwerk Pension Trust in the sum of $174,364.37, which represented the entire proceeds of both the preretirement death benefit under the pension plan and the group life

insurance policy of which the defendant was the sole named beneficiary. Upon the defendant's refusal to distribute two thirds of this amount to the two children of the decedent's first marriage, the plaintiff commenced the instant action on behalf of her children. She specifically sought the imposition of a constructive trust with respect to the benefits received by the defendant. By way of an affirmative defense, the defendant maintained that the group life insurance policy of which she was the sole named beneficiary preexisted the 1976 separation agreement and, consequently, could not constitute a future insurance policy within the meaning thereof.

Following the deposition of the president of the Paid Plans Corporation, the firm of consultants which prepared the subject pension plan for the decedent's employer, the plaintiff moved for summary judgment. In support thereof, the plaintiff maintained that although the $50,000 group life insurance policy naming the defendant as sole beneficiary was effective prior to the date of the rider, it should be considered "future insurance" inasmuch as she had no knowledge of the existence of such policy at the time the agreement was entered into. Furthermore, the preretirement death benefit, which was alleged to be the equivalent of life insurance, did not become effective until December 28, 1976, subsequent to the execution of the separation agreement.

Special Term denied the plaintiff's motion for summary judgment and, instead, dismissed the complaint in its entirety, holding that the $50,000 group life insurance policy was not subject to the restriction contained in the rider's second paragraph since it predated the separation agreement and declaring that the preretirement death benefit was "not the equivalent of life insurance". Judgment was entered denying the plaintiff's motion and granting summary judgment in favor of the defendant dismissing the complaint. The plaintiff has not pursued her claim to the group life insurance policy on this appeal. The appeal is thus limited in scope to the issue of whether preretirement death benefits funded by life insurance should be construed to constitute life insurance within the meaning of the separation agreement. We are of the view that such a construction is necessary in order to effectuate the underlying intent of the signatories to that agreement.

The threshold inquiry is whether the "any and all future insurance" provision of the separation agreement is sufficiently clear and unambiguous as to lead to the conclusion that it does not embrace the benefit here at issue. If so, any

further inquiry is precluded as there is no need to look beyond the four corners of the contract *(Richardson v Dorato,* 92 AD2d 687). It is a well-settled tenet of insurance and general contract law that ambiguity should not be found where none in fact exists *(Loblaw, Inc. v Employers' Liab. Assur. Corp.,* 57 NY2d 872, 877; *Lane v Bankers Life & Cas. Co.,* 111 AD2d 371, 372). If, on the other hand, a provision is ambiguous, it is imperative for courts to resolve the ambiguity by resorting to surrounding circumstances, to the common and legal meanings of the terms involved, where such meanings are clear, and, of paramount significance, to the manifest purpose sought to be accomplished *(see, Aron v Gillman,* 309 NY 157, 163; *Mencher v Weiss,* 306 NY 1, 6; *Matter of Herzog,* 301 NY 127, 135; *Rosenthal Jewelry Corp. v St. Paul Fire & Mar. Ins. Co.,* 21 AD2d 160, 165-167, *affd* 17 NY2d 857; *Kasen v Morrell,* 6 AD2d 816; 22 NY Jur 2d, Contracts, §§ 195-197, at 35-41).

In the instant case, the language of the rider seems clear on its face. This does not, however, preclude the existence of a latent ambiguity. A latent ambiguity emanates from a situation where "the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous or obscure state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by a mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the extraordinary or legal sense of the words made use of" (22 NY Jur, Evidence, § 617, at 127).

We are confronted at bar with the classic example of a latent ambiguity. Although the parties to the separation agreement were of the belief that the language which they had utilized in the rider would address all possibilities, it is apparent that they never contemplated the instant situation. Consequently, there is now a lack of consensus among the parties as to whether preretirement death benefits of a pension plan qualify as insurance. Stated succinctly, the ambiguity emanates from the fact that a preretirement death benefit of a pension plan possesses some of the attributes of traditional insurance but not others. Initially, it is obviously not labeled as an insurance policy. Moreover, the preretirement death benefit has as its theoretical underpinning a purpose slightly at variance from insurance in the classic sense, since it serves as a replacement for the periodic pension payments which an eligible employee would have received had he sur-

vived past his retirement *(see, Toole v Manufacturers & Traders Trust Co.,* 80 AD2d 720; 44 NY Jur, Pensions and Retirement Systems, § 2, at 257; § 16, at 284). However, the mere fact that preretirement death benefits and traditional forms of life insurance are not identical does not render them mutually exclusive. As recognized in 1 Couch, Insurance (§ 1.76, at 242 [2d ed]), "the mere calling of a contract of insurance by any particular appellation that may be adopted for business or conventional uses or classification cannot make a policy containing an agreement to pay another a sum of money upon the happening of an unknown or contingent event, dependent upon the existence of a life, other than one of life insurance, and that it is none the less so because coupled with an investment or bond feature". In the words of Judge Cardozo: "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal" *(Wood v Duff-Gordon,* 222 NY 88, 91).

Insurance Law § 1101 (a) (1) defines an "insurance contract" as "any agreement or other transaction whereby one party, the 'insurer', is obligated to confer benefit of pecuniary value upon another party, the 'insured' or 'beneficiary', dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event". The preretirement death benefit at issue in this case unmistakably meets every facet of this definition since it involves a payment made to a beneficiary who is materially interested in the insured's life upon the loss of that life. Thus, while the form of the death benefit emanates in theoretical terms from a different motive than a typical life insurance policy, both are fulfilling an identical insurance function, namely, payment of a pecuniary benefit upon the event which adversely affects the beneficiary. Such benefits are administered in much the same way as regular life insurance, by the maintenance of funds sufficiently large to distribute the risk of loss in a financially tenable manner *(see,* Insurance Law § 4602 [d]; § 4606). The pension plan involved at bar was itself funded through a group life insurance policy. Significantly, the regulation of pension and retirement systems as a whole, not just death benefits, is interwoven into and is an integral part of the Insurance Law (Insurance Law § 4608). As further illustration of the insurance-like nature of the subject's benefit, Insurance

Law § 7303 provides for the conversion of retirement systems into mutual life insurance companies.

While clearly not dispositive of the issue, the fact that the United States Internal Revenue Code treats the proceeds of preretirement death benefits funded by life insurance similarly to those of conventional life insurance policies (26 USC § 72 [m] [3] [C]) further advances the plaintiff's case.

Perhaps the most compelling argument which can be made in support of the plaintiff's position is the fact that inclusion of the preretirement death benefit would most closely effectuate the purpose of the separation agreement and rider. Prior to the execution of the separation agreement, the decedent had been seriously ill with cancer. Although in complete remission, his illness remained a factor to be reckoned with. After the execution of the main body of the separation agreement which provided for various forms of support for the two children, the plaintiff requested that a provision be drafted to ensure that the children would be included as beneficiaries in one specified existing policy and in any "future insurance" that the decedent might receive. The defendant herself concedes that the decedent was mindful of the tenuousness of his health in making his financial plans. The defendant was, moreover, cognizant of the fact that her husband's medical history rendered him uninsurable both for purposes of conventional life insurance and mortgage insurance.

Viewed in this light, the choice of language in the rider was deliberate. The parties sought thereby to broadly include within the ambit of "future insurance" any future benefit which might conceivably arise. Although they did not specifically contemplate it, inclusion of the preretirement death benefit within this broad rubric is in accordance with the contracting parties' intentions (see, Rosenthal Jewelry Corp. v St. Paul Fire & Mar. Ins. Co., 21 AD2d 160, 167, supra) and comports with existing law and regulations (see, Insurance Law § 4601 et seq.).

The case of Mohawk Airlines v Peach (61 AD2d 346, lv denied 44 NY2d 838), relied upon by Special Term for the proposition that a preretirement death benefit is not the equivalent of life insurance, does not compel a result favorable to the defendant in this case. Insofar as is pertinent to the instant appeal, the holding therein was merely that a claim by a decedent's first wife to the proceeds of retirement plans which were maintained for his benefit by his employer and of

which she was the original beneficiary, was waived by her execution of a separation agreement whereby she waived, released and renounced all claims in or to any part of his estate or property. In no way can such a ruling be read to preclude inclusion in the instant case of the preretirement benefit within the ambit of "future insurance".

In conclusion, the language of the rider to the 1976 separation agreement should be construed to embrace the preretirement death benefit herein at issue for the following reasons: (1) the benefit comes within the statutory definition of insurance, (2) although different in form, it closely comports with the function of life insurance, and (3) the underlying purpose of the separation agreement, i.e., protecting the interests and insuring the support of the decedent's two children, is best effectuated by its inclusion. Accordingly, the children are entitled to share with the defendant as beneficiaries in the proceeds of the preretirement death benefit. The plaintiff should, therefore, have been granted judgment on behalf of her children in the sum of their apportioned share of said benefit. Thus, the judgment should be reversed insofar as appealed from, and partial summary judgment granted to the plaintiff as to her cause of action which demanded, on behalf of her children, two thirds of the proceeds of the preretirement death benefit.

BRACKEN, J. P., NIEHOFF and SPATT, JJ., concur.

Justice Spatt has been substituted for the late Justice Gibbons (see, 22 NYCRR 670.2 [c]).

Ordered that the judgment of the Supreme Court, Queens County, dated June 10, 1985, is reversed insofar as appealed from, with costs, that portion of the judgment which granted summary judgment to the defendant dismissing the plaintiff's claim as to a preretirement death benefit is vacated, that branch of the plaintiff's motion which was for partial summary judgment as to her cause of action which demanded, on behalf of her children, two thirds of the proceeds of the preretirement death benefit is granted, and the matter is remitted to the Supreme Court, Queens County, for the entry of an appropriate judgment.