■ EATON ELECTRIC, INC., Respondent, v DORMITORY AUTHORITY OF STATE OF NEW YORK, Appellant. [852 NYS2d 363]—

In an action to recover damages for breach of contract, the defendant appeals from an order of the Supreme Court, Kings County (Demarest, J.), dated December 6, 2006, which denied its motion for summary judgment dismissing the second, third, and fourth causes of action.

Ordered that the order is affirmed, with costs.

The defendant, Dormitory Authority of State of New York (hereinafter DASNY), is a public authority which arranges for the financing of construction projects at not-for-profit institutions including the City University of New York (hereinafter CUNY). With respect to CUNY projects, DASNY also acts as owner of the projects, taking title to the property, contracting for design and construction, and leasing the projects back to CUNY pending repayment of the amount financed.

On May 10, 1999 the plaintiff entered into a contract with DASNY pursuant to which the plaintiff agreed to perform certain electrical work and furnish all necessary supplies and materials incident to that work for a fixed price of $8,933,000 (hereafter the contract), in connection with a project to renovate the existing library and construct a new addition to that library at Brooklyn College.

Pursuant to the contract, the plaintiff furnished a payment bond and a performance bond in favor of DASNY, as obligee, covering payment for labor, materials, and performance of its obligations under the contract. AXA Global Risks US Insurance Company (hereafter AXA) issued the bonds.

Through no fault of its own, the plaintiff's work pursuant to the contract was delayed, causing it to experience financial difficulties and to seek financial assistance from AXA. AXA agreed to advance funds to the plaintiff in exchange for an assignment, entitled "Assignment of Contrary Moneys" (hereinafter the assignment), pursuant to which the plaintiff agreed to assign its "right, title and interest in and to any and all payments on account of estimates, change orders, extras, claims or bonuses including, but not limited to, the final estimate, final payment and retainage, and any other money now due or hereafter to become due arising out of the Contract between [the plaintiff] and [DASNY], together with all rights of action accrued or which

may accrue thereunder." From that point forward, the plaintiff continued its performance obligations under the contract and continued dealing directly with DASNY concerning any matters arising out of the contract, while AXA received payments directly from DASNY for the plaintiff's work performed under the contract.

In a notification of construction completion dated August 28, 2002 DASNY accepted the plaintiff's work as completed, with the exception of outstanding punchlist items, which included more than 800 incomplete work items entailing substantial work. CUNY occupied and began using the library on that date.

On August 29, 2002 the plaintiff requested that DASNY reduce the retainage it was permitted to withhold from its monthly partial payments, pursuant to general conditions § 17.01D of the contract, from 5% to 2.5%, based upon DASNY's "beneficial occupancy" of the library. Pursuant to section 1 of the general conditions of the contract, "beneficial occupancy" is defined as "[t]he use, occupancy or operation by the Owner of the work or any part thereof as evidenced by a notification of Beneficial Occupancy executed by the Owner."

In a letter dated January 13, 2003, the plaintiff repeated its request for a reduction of retainage. On February 11, 2003 the plaintiff, using a requisition form provided to it by DASNY's construction manager, Turner Construction Company (hereafter Turner), requested DASNY to pay it one half of the retainage that DASNY was withholding as of that date, which it calculated to be in the sum of $260,351.31. In the form, the plaintiff stated that its work pursuant to the contract work was 99.22% complete.

In a memorandum by Turner's project manager, Frank Yozzo, dated February 19, 2003, Turner informed DASNY's project manager, Eugene Leung, that the plaintiff had completed 99.55% of the work required by the contract, with the remaining amount of DASNY's obligation with respect to that work totaling $40,300.23, and 75% of the punchlist items, with the remaining obligation for the punchlist items valued at no more than $75,000. Yozzo further stated that change orders remained to be processed that were valued at $578,000. Yozzo recommended a reduction of retainage from 5% to 2.5% and the release of a payment to the plaintiff in the sum of $260,351.31.

In a memorandum dated February 20, 2003, Leung calculated that the plaintiff had completed work valued at $10,414,049.59 as of that date, and also recommended a payment to the plaintiff in the sum of $260,351.31.

DASNY's accounts payable office reviewed the requisition and

increased the amount of retainage to be released from the sum of $260,351.31 to the sum of $262,319.84, based upon its own calculations that took into account a pending progress payment that had not been included in the plaintiff's calculation.

In a letter to AXA dated March 3, 2004, DASNY enclosed forms entitled "RELEASE FORM/REDUCTION OF RETAINAGE" (hereinafter the release) and "CONSENT OF SURETY/REDUCTION OF RETAINAGE" to be executed by AXA (hereinafter the consent of surety). The release referred to and identified AXA as "Contractor" and stated that, in consideration of the sum of $10,230,468.17, "heretofore or now paid" by DASNY, AXA: "has remised, released and forever discharged and by these presents does for itself, its successors and its assigns, remise, release and forever discharge [DASNY], . . . from all claims of liability to the Contractor for anything furnished or performed in connection with, or arising out of the contract . . . between [DASNY] and the Contractor . . . or out of the work covered by said contract . . . including, but not limited to, all claims for extra work or by reason of extra work, labor or materials, or additional work or by reason of additional work, labor, or materials furnished or performed in connection with, relating to, or arising out of the subject matter of said contract, and any prior act, neglect or default on the part of [DASNY] . . . and all manner of action and actions, cause and causes of action, suits, . . . sums of money, . . . contracts, . . . agreements, . . . promises, . . . damages, judgments, . . . claims and demands whatsoever in law or in equity, which against [DASNY] . . . the Contractor ever had, now had, or which its successors or assigns hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever."

The release contained an exclusion for the portion of the retainage that was not being released, which was in the sum of $262,319.70. This exclusion clause provided spaces in which AXA was to write any additional exclusions for "a claim for damages in the amount of _____ dollars ($ _____) presented to [DASNY]." In these spaces, AXA wrote the terms "N/A" and "0." AXA executed the release on March 7, 2003 and DASNY issued a check to AXA on April 1, 2003 in the sum of $262,319.84.

Pursuant to a statement of claim dated July 30, 2004, the plaintiff submitted a claim to DASNY for payment of the additional sum of $12,467,606 as reimbursement for damages and losses on account of "unanticipated and unforeseen additional costs of labor, materials and vendors [and] additional job supervision, overhead and related project costs." In the statement of claim, the plaintiff also sought a payment of an alleged unpaid balance of the contract price in the amount of $452,810.

On July 5, 2005 the plaintiff commenced the instant action against DASNY, seeking to recover the amounts stated in its statement of claim. In the first cause of action, the plaintiff sought to recover the alleged unpaid balance of $452,810 for the contract and extra work it had performed and completed. In each of its second, third, and fourth causes of action, the plaintiff sought to recover the sum of $13,000,000, which included the additional costs of labor, materials, and tools; additional job, overhead, and supervisory expenses; additional insurance expenses; loss of use of equipment; additional costs of maintenance and repairs; and other additional costs of construction. The plaintiff asserted that DASNY breached the contract and that the plaintiff's performance of the contract was repeatedly suspended, delayed, and disrupted by DASNY's failure to provide an adequate and complete design for the project or to follow an acceptable coordinated schedule for the project, and by the repeated and continuous material contract changes made by DASNY throughout the course of the project.

DASNY moved for summary judgment dismissing the second, third, and fourth causes of action. The Supreme Court denied the motion, determining that the assignment merely assigned the proceeds of the contract, but not any additional rights under the contract. The court thus concluded that AXA did not have the authority to release the plaintiff's claims against DASNY, including the instant claims. The Supreme Court also determined that, contrary to DASNY's contentions, its payment of the sum of $262,319.84 to AXA did not operate as a "substantial completion" payment pursuant to section 17.01D of the general conditions of the contract, and thus did not render AXA's acceptance of such payment a release of plaintiff's claims pursuant to section 17.02 of the general conditions of the contract. We affirm, although on slightly different grounds.

By the unambiguous terms of the assignment, and contrary to the Supreme Court's findings, the plaintiff did not merely assign to AXA its right to collect the contract proceeds. Indeed, in addition to assigning the right, title, and interest to money due or to become due arising out of the contract, the plaintiff also assigned to AXA "all rights of action accrued or which may accrue thereunder."

Despite this seemingly broad assignment of rights, the plaintiff nevertheless continued to perform and complete its work under the contract without breaching or defaulting upon any contractual obligations. In addition, the plaintiff continued to submit and pursue all claims for additional compensation and delay damages, while AXA merely collected the monies

earned by the plaintiff. AXA's written communication with DASNY was limited to the receipt of the monies earned by the plaintiff and the filing of the assignment and release.

It is in this context that AXA's execution of the release must be considered. Indeed, "[t]he meaning and scope of a release must be determined within the context of the controversy being settled" (*Matter of Schaefer*, 18 NY2d 314, 317 [1966]; *see Matter of Frankel*, 292 AD2d 526 [2002]). AXA's insertion of the term "N/A," meaning not applicable, in the release with respect to the reservation of rights regarding additional claims creates a latent ambiguity in the release (*see Teig v Suffolk Oral Surgery Assoc.*, 2 AD3d 836 [2003]; *Lerner v Lerner*, 120 AD2d 243 [1986]). Indeed, while DASNY contends that, by this insertion, AXA acknowledged that there were no additional claims whatsoever, the plaintiff argues that AXA was merely stating that AXA itself did not have any additional claims, and made the insertion with the understanding that the plaintiff could still pursue certain claims. The plaintiff asserts that this result is warranted since the assignment did not assign all of its rights to AXA, and the parties had continued to act as though the plaintiff had retained certain rights pursuant to the contract. AXA's interpretation of the release is confirmed by the affidavit of Paul Alongi, Sr., AXA's surety claims manager. Because of the ambiguity, it is appropriate to consider such extrinsic evidence and the surrounding circumstances (*see Teig v Suffolk Oral Surgery Assoc.*, 2 AD3d 836 [2003]; *Lerner v Lerner*, 120 AD2d 243 [1986]). Under the circumstances, the release was not intended by the parties to release DASNY from liability for claims that now comprise the plaintiff's second, third, and fourth causes of action, and accordingly, the Supreme Court properly denied DASNY's motion for summary judgment dismissing those causes of action, notwithstanding DASNY's contentions that the release barred such claims.

DASNY also contends that its payment of the sum of $262,319.84 to AXA constituted a "substantial completion" payment, acceptance of which, by operation of sections 17.01D, 17.02, and 17.03 of the general conditions of the contract, constituted a release of "all claims by and all liability to the Contractor for all things in connection with the Work and for every act and neglect of the Owner and others relating to or arising out of the Work." However, in opposition to the defendant's prima facie showing of entitlement to judgment as a matter of law with respect to this issue, the plaintiff raised numerous issues of fact, through correspondence demonstrating the actions and intent of the parties, as well as an affidavit from

its project manager, as to whether such payment was actually a routine monthly partial payment pursuant to sections 17.01A and E of the general conditions of the contract. Accordingly, for this reason as well, the Supreme Court properly denied DASNY's motion for summary judgment dismissing the plaintiff's second, third, and fourth causes of action. Mastro, J.P., Skelos, Florio and Dickerson, JJ., concur.