DAVID E. NEITLICH *vs.* AMICA MUTUAL INSURANCE COMPANY.

Middlesex.   April 20, 1979. — May 24, 1979.

Present: GOODMAN, BROWN, & GREANEY, JJ.

Subrogation. *Insurance*, Subrogation, Interest. *Interest. Consumer Protection Act*, Subrogation, Interest.

An insurer who had paid its insured for loss resulting from an automobile theft and then recovered a judgment against third persons for a sum in excess of its payment to the insured was entitled to retain so much of the interest component of the judgment as was allocable to the amount it had paid. [663-664]

CIVIL ACTION commenced in the Superior Court on May 3, 1977.

The case was heard by *Donelan, J.*, a District Court judge sitting under statutory authority.

*David E. Neitlich*, pro se.

*George R. Toothaker, Jr.*, for the defendant.

GREANEY, J. On August 9, 1973, the plaintiff had his automobile, a 1972 Cadillac coupe, stolen from a parking lot. On September 17, 1973, the defendant, his theft insurer, accepted his proof of loss and shortly thereafter paid

$5,776.11 for the theft loss.[1] In keeping with the terms of the policy,[2] the plaintiff executed a subrogation receipt.[3] Under the receipt, the defendant brought suit against the owner of the parking lot and the attendant responsible for the loss. In late 1976, the insurer recovered judgment against the third parties liable for the theft, and ultimately received the sum of $8,407.54 in satisfaction of the execution issued pursuant to the judgment. On March 3, 1977, the defendant disbursed this amount and accounted to the plaintiff for its allocation of the proceeds.[4] At issue is the sum of $1,021.21, representing so much of the $1,188.43 interest component of the judgment as was allocable to the $5,776.11 originally paid to the plaintiff. The plaintiff asserts that the interest belongs entirely to him, that it should not have been prorated, and that the defendant has acted unfairly or deceptively in violation of

---

[1] The payment included $5,500.00 for the actual cash value of the car, three percent sales tax on that amount, and $111.11 for two snow tires.

[2] The policy provided: "4. Subrogation .... [I]n the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to receive such rights. The insured shall do nothing after loss to prejudice such rights."

[3] The receipt provided: "It is agreed the Company is subrogated, to the extent of its payment, to all rights of recovery for such loss or damage, with full authority to prosecute or compromise claims and actions, without any obligation to account to its insured for any sum or sums recovered, except sums recovered in excess of said payment and in excess of all proper expenses of collection.... The insured hereby reserves all rights of recovery for loss of use of the vehicle."

[4] The $8,407.54 judgment was made up of three components — damages for the loss, interest thereon and court costs — which were allocated by the defendant as follows:

|  | To defendant | To plaintiff | Total |
|---|---|---|---|
| Damages | $5,776.11 | $1,335.00 (loss of use) | $7,111.11 |
| Interest | 1,021.21 | 167.22 | 1,188.43 |
| Costs | 108.00 | —— | 108.00 |
|  | 6,905.32 | 1,502.22 | 8,407.54 |

the provisions of G. L. c. 93A by refusing after demand to pay over the portion of the interest it retained. The judge who heard the claim was unpersuaded, found no violation of G. L. c. 93A, ruled that the defendant had properly distributed the interest, and entered judgment for the defendant. We affirm.

The contractual rights of the parties are contained in the policy and the subrogation agreement. These documents subrogated the insurer to the extent of its payment to the plaintiff's rights against third parties liable for the loss and afforded the plaintiff the right to an accounting from the insurer for sums recovered in excess of the payment and all proper expenses of collection. The defendant complied precisely with its contractual obligations by accounting for the monies recovered in excess of the amount originally paid. There was nothing in the contracts that would give the plaintiff the right to claim all the interest. Nor has any claim been made as to the validity of the contracts.

With the terms of the contract satisfied, the rights of the parties are left to adjustment under principles of insurance law, specifically principles concerning subrogation rights under casualty policies. These rules constitute a branch of the law of subrogation, bring into play equitable themes, and require that any excess sums recovered by the insurer over the amount paid to the insured be divided fairly. As put by one commentator on insurance law with somewhat of a rhetorical flourish, "Subrogation ... [has] for its basis the doing of complete and perfect justice, without regard to form, in all cases where the equities demand it." 16 Couch, Insurance 2d § 61:20, at 251 (1966). See also *General Exch. Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 365-366 (1944); *Travelers Ins. Co.* v. *Graye*, 358 Mass. 238, 240-241 (1970). As a result each party in this case was entitled to recover an amount which would fairly reimburse the loss each incurred. Since the plaintiff was out of pocket for loss of use he was entitled to be recompensed out of the recovery for that loss and interest

specifically attributable to that amount. The insurer was entitled to the expenses of collection, the amount it paid at the time of the loss and "interest upon the amount of the loss paid from the time of payment." 6A Appleman, Insurance Law and Practice § 4103, at 389 (1972), and cases cited. Compare *Winchell* v. *Plywood Corp.*, 324 Mass. 171, 181 (1949). This is precisely what each received. We find nothing unfair or deceptive in the insurer's conduct which would violate the broad remedial provisions of G. L. c. 93A. That statute and subrogation principles tap the same well in requiring adherence to standards of fair dealing. The defendant's ultimate disposition of the funds was fair and reasonable and was "neither immoral, unethical, oppressive nor unscrupulous . . . ." *PMP Associates, Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). See also *Federal Trade Comm.* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972). As expressed by the judge, "Each party was thus made whole and neither can justly claim that the other has made a profit." In these circumstances we agree and find the plaintiff's c. 93A claim without merit.

*Judgment affirmed.*