**FARIBAULT WOOLEN MILL CO., Appellant,**

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY et al., Respondents.**

**No. 49105.**

Supreme Court of Minnesota.

Nov. 9, 1979.

Rehearing Denied Feb. 5, 1980.

Jesse & Cosgrove and Jon A. Hanson, Minneapolis, for appellant.

Stringer, Donnelly, Courtney, Cowie & Rohleder and A. James Dickinson, St. Paul, for respondents.

Heard before SHERAN, C. J., TODD and MAXWELL, JJ., and considered and decided by the court en banc.

STEPHEN L. MAXWELL, Justice.*

Plaintiff, Faribault Woolen Mill Co., brought suit under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A. § 20(11) (1978),[1] against the defendant rail carriers to recover for a water-damaged shipment of "greasy wool" which defendants transported. The case was tried to the court without a jury. The trial court ruled alternatively (1) that plaintiff failed to establish a prima facie case of liability under the Carmack Amendment, and (2) that, assuming *arguendo*, that plaintiff did establish a prima facie case, defendants had rebutted the case. Accordingly, it granted defendants' motion for summary judgment and dismissed the action. We reverse, holding that plaintiff did establish a prima facie case of liability under the Carmack Amendment, which defendants' evidence failed to rebut.[2]

Plaintiff shipped 120 bales of New Zealand "greasy wool" (uncleaned, freshly shorn wool) from New Zealand to its factory in Faribault, Minnesota, in a large metal ocean cargo container roughly the size of a semitrailer. The container was designed so that wheels could be attached for hauling it over the road.

The container left Auckland, New Zealand, aboard an ocean vessel on May 29, 1974, and arrived in Norfolk, Virginia, on July 22, 1974. Apparently the steamship company retained possession and control of

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.Stat. § 2.724, subd. 2 (1978).

1. The Carmack Amendment subjects common carriers to liability "for any loss, damage, or injury to * * * property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States when transported as a through bill of lading * * *." 49 U.S.C.A. § 20(11) (1978).

2. We interpret the district court's ruling that plaintiff failed to establish a prima facie case as a ruling granting defendants' motion for summary judgment. However, the trial court's memorandum, made a part of the court's findings, conclusions, and order for judgment, provides an alternative ruling when it states: "Assuming but not admitting that Plaintiff established a prima facie case of liability of the Defendants from all the facts and circumstances it would appear that Defendants have at least balanced proof as to claimed liability and under the foregoing rules [concerning the burden of proof] Plaintiff's case must fail." For the reasons explained *infra*, we reverse both alternative rulings.

the container until August 9, 1974, when it was converted into a trailer, hauled by a Norfolk cartage firm to defendant Norfolk and Western Railway's terminal, and loaded on a flat-car for rail transport to Faribault. The container left Norfolk on August 11, 1974, and connected in Chicago with defendant Chicago, Rock Island and Pacific Railroad, which delivered the container to Faribault on August 20, 1974. That same day, Yule Transport of Medford, Minnesota, hauled the container, again converted to a trailer, about a mile from the terminal to plaintiff's plant in Faribault.[3]

At plaintiff's dock, plaintiff's employees broke the container's seal and opened its doors. The unpleasant odor and rotted condition of the visible bales announced that the cargo was water-damaged.[4] After unloading the several damaged bales stacked within three to four feet of the doors of the container, plaintiff's employees discovered a hole, four to five inches in diameter, in the container's metal top. It had jagged edges as if it had been punched in, and was covered from the outside top of the container with tape. One side of the tape was loose, allowing a sliver of light to enter through the hole. The most severely damaged bales were located directly below the hole. The hole was observed only from inside the container; no one observed the top surface of the tape or the container.

At trial, to prove that defendants received the container in good condition at origin, plaintiff introduced bills of lading and inspection reports which defendants' employees issued in Norfolk on August 9, and in Faribault on August 20. The reports indicated that on those dates defendants inspected the outside of the cargo container, finding no "exceptions" to the warranted receipt of the container in "apparent good order (contents and condition of contents of packages unknown)." Each report contained a pictorial representation of the top

of the container on which visible defects were to be marked; the reports noted "no damage or deficiency" to the top, nor did they indicate that the top was not inspected. The trial court considered this evidence insufficient to prove that the damage occurred when the shipment was in the custody of the defendant-railroads, that the defendants were negligent in handling the shipment, or that the wool in the trailer was in good condition when delivered to either or both defendants.

Plaintiff's appeal from the trial court's judgment of dismissal presents two issues: (1) Was plaintiff's evidence sufficient to establish, as an essential element of the prima facie case for defendants' liability under the Carmack Amendment, that the defendant railroads received the property in good condition in Norfolk? (2) If plaintiff did make out a prima facie case for recovery, was defendants' rebuttal evidence sufficient to permit judgment for defendants?

1. Under the Carmack Amendment, a shipper makes out a prima facie case of the carrier's liability for damaged goods by proving delivery of the goods to the carrier in good condition, arrival of the goods in damaged condition, and the amount of damages. *Missouri P. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); *Blue Bird Food Products, Inc. v. Baltimore & Ohio Railroad Co.*, 492 F.2d 1329, 1332 (3d Cir. 1974). Here only the first element, delivery to the carrier in good condition, is disputed. Plaintiff contends that its evidence, consisting of the clean bills of lading and inspection reports, was sufficient to sustain its burden of proving that the container was not in a defective or damaged condition when delivered to defendants at Norfolk. We agree, rejecting defendants' contention that plaintiff failed to sustain its burden of proof on this element because plaintiff presented no direct evidence of the ship-

---

**3.** Yule Transport, called Drache Truck Lines at the time of the occurrence, was originally a defendant in this action. When it became apparent that Yule had possession of the container for only 20 minutes on a rainless day, plain-

tiff and the railroad defendants dismissed their respective claims and cross-claims against Yule Transport.

**4.** Damages were stipulated at $11,013.75.

ment's condition at origin, and because ordinary inspection at origin would not have disclosed the damage to the container.

The parties cite cases on both sides of the question of whether clean bills of lading, without more, suffice to establish prima facie that a shipment of goods was delivered to the carrier in good condition. None of these cases are controlling, however. They involve circumstances in which defects to smaller packages or loss of goods were so obvious that any reasonable inspection by the carrier at origin would have revealed the damage or loss,[5] or where defects to the goods or container were so concealed that no reasonable inspection of the outside of the shipping container would reveal them.[6] The instant case does not fit neatly into either category.

We take guidance from *Reider v. Thompson*, 197 F.2d 158 (5th Cir. 1952). *Reider* involved an action under the Carmack Amendment against a railroad to recover for water-damaged sheepskins. The sheepskins were shipped in cases, the shipment originating in a foreign country and arriving in New Orleans by ocean carrier. The defendant rail carrier transported the shipment from New Orleans to Boston, where 12 cases were found to be water-stained. To prove that the rail carrier received the shipment in good condition, the plaintiff introduced the bill of lading issued by the carrier at point of origin in New Orleans. As in the instant case, it represented that the shipment was received in "apparent good order, but that the contents and condition of contents of packages [were] unknown," of which the Fifth Circuit Court said, on remand from the Supreme Court:

These provisions are considered to relate to the external condition of the packages and do not establish the condition of the contents. However, when packages are received by the carrier in acknowledged good external condition but are delivered by the carrier in a damaged or stained condition which could reasonably and logically be found to indicate that the discovered damage or deterioration of the contents resulted from the cause indicated by the condition of the external package, theretofore received in good condition, the trier of facts may infer from these circumstances that damage to the contents was occasioned by the negligence of the carrier in the respect indicated by the changed external condition of the package. "The outturn itself" may be considered as evidence.

197 F.2d 161.

On remand from the Fifth Circuit, the United States District Court in *Reider v. Thompson*, 116 F.Supp. 279, 280 (E.D.La. 1953), found that the sheepskins were damaged by water "from an undisclosed outside source during transit," and that defendant's clean bill of lading, issued after inspection of the unopened cases, established that the shipment was in "external good order and condition when received" in New Orleans. Ordering judgment for plaintiff, the court concluded:

When a consignment is received by a common carrier in external good order and condition and delivered by it in damaged condition, with the external covering of the goods so damaged as to account for the damage to the contents, the consignee need not prove the internal good order of the goods at the time of receipt by the carrier, and the presumptive liability of the carrier is established. *Reider v. Thompson*, 197 F.2d 158, 161 (5 Cir. 1952); *Flota Mercante Del Estado v. Orient Ins. Co.*, 198 F.2d 740 (5 Cir. 1952),

---

5. *Minneapolis Fire & Marine Ins. Co. v. B. & O. R. Co.*, 237 Minn. 111, 53 N.W.2d 828, 33 A.L. R.2d 860 (1952); *Levine v. Duluth & Iron Range Railroad Co.*, 171 Minn. 205, 214 N.W. 17 (1927); *Northwestern Marble & Tile Co. v. Williams*, 128 Minn. 514, 151 N.W. 419 (1915).

6. *Ed Miniat, Inc. v. Baltimore & Ohio R. Co.*, 190 U.S.App.D.C. 380, 587 F.2d 1277 (D.C. Cir.

1978); *Blue Bird Food Products Co. v. Baltimore & Ohio R. Co.*, 492 F.2d 1329 (3d Cir. 1974); *World Wide Meats, Inc. v. Chicago & N. W. Transp. Co.*, 383 F.Supp. 807 (N.D.Iowa 1974); *Lincoln Farm Products Corp. v. Central R. of N. J.*, 81 N.J.Super. 161, 195 A.2d 200 (1963).

affirming D.C.E.D.La.1951, 102 F.Supp. 729.

116 F.Supp. 280.

In the instant case defendants' employees inspected the cargo container at origin in Norfolk and issued a clean bill of lading and an inspection report form. The form specifically instructed the inspecting employee to note any damage to the container itself, including damage to the top surface where the hole was found on a pictorial representation of the container's outside surface. Defendants' employees made no such notations and indicated no "exceptions" to the warranted receipt of the container. The forms had no such notations and warranted receipt of the container indicated no "exceptions" to the warranted receipt of the container in "apparent good order * *." But on arrival at plaintiff's factory in Faribault, the metal top of the container was "so damaged as to account for the damage to the contents * * *." Id. Because the circumstances of the cargo container inspection were peculiarly within the knowledge of defendants, *Missouri P. R. Co. v. Elmore & Stahl, supra,* 377 U.S. at 143, 84 S.Ct. 1142, we hold that the clean bills of lading and inspection reports did establish that the cargo container itself was in good condition when received by defendants at origin. Thus, plaintiff established a prima facie case under the Carmack Amendment, and the burden shifts to the defendants to show that they were free from negligence and that the damage to the wool was due to one of the excepted causes relieving the carrier of liability under the amendment.[7]

2. At the close of plaintiff's case-in-chief, the court took under advisement defendants' motion for summary judgment. Defendants then put into evidence several exhibits and called one witness, upon which they relied in rebuttal in case the court found that plaintiff did establish a prima facie case. Precipitation reports showed that 9.94 inches of rain fell in Norfolk dur-

ing the time the cargo container was there prior to delivery to defendant Norfolk and Western, and that a total of 1.26 inches of rain fell at selected points along the rail route to Faribault while the defendants had possession of the cargo container. The station agent for defendant Chicago, Rock Island & Pacific, who completed the August 20 inspection report in Faribault, testified that he made a visual inspection of the outside of the cargo container and noted no exceptions to the integrity of the cargo container; he did not, however, look at the container's top surface because he did not have a ladder. The agent further testified that the condition of the container in Norfolk was "evidently all right," judging by the absence of noted exceptions on the inspection reports completed there; and that if there were a hole in the container when received at origin or if the container were damaged while in the rail carriers' possession, an exception should have been noted on the inspection reports.

■ In the face of the plain indications on the bills of lading and inspection reports, completed by defendants' employees, that the container's top surface was undamaged on inspection at origin, we conclude as a matter of law that the inferences permitted by defendants' evidence fall short of rebutting plaintiff's prima facie case of liability by bringing the case into "equipoise." See, 30 Am.Jur.2d Evidence § 1165. Although the precipitation statistics permit the inference that most of the water entered the container before defendant Norfolk & Western took custody on August 9, they are also consistent with plaintiff's contention that the damage to the wool occurred while in defendants' possession. Far from proving that defendants were free from negligence, the station agent's testimony if anything is evidence of negligent inspection by defendants. Although the circumstances of the inspections were peculiarly within defendants' knowledge, they presented no di-

---

7. The Carmack Amendment codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by (a) an act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods. *Missouri P. R. Co. v. Elmore & Stahl,* 377 U.S. 137, 140, n. 12, 84 S.Ct. 1142 (1964).

rect evidence of the condition of the container at origin. Defendants' evidence did not establish when the hole was made, when it was covered with tape, when the edge of the tape came loose, or whether the tape blended in with the exterior surface of the container making discovery of the hole impossible on reasonable inspection.[8]

Thus we hold that the defendants failed to rebut plaintiff's prima facie case by showing that they were free from negligence and that the damage came within the exceptions of 49 U.S.C.A. § 20(11) (1978). This result is consistent with the "sound premise" of the general rule of carrier liability—"that the carrier has peculiarly within its knowledge '[a]ll the facts and circumstances upon which [it] may rely to relieve [it] of [its] duty. * * * In consequence, the law casts upon [it] the burden of the loss which [it] cannot explain or, explaining, bring within the exceptional case in which [it] is relieved from liability.' *Schnell v. The Vallescura*, 293 U.S. 296, 304, 55 S.Ct. 194, 79 L.Ed. 373." *Missouri P. R. Co. v. Elmore & Stahl, supra*, 377 U.S. at 143, 84 S.Ct. at 1148.

The summary judgment in defendants' favor is reversed. We direct the district court to order entry of judgment in favor of plaintiff in the amount of the stipulated damages.[9]

Reversed and remanded with directions.

OTIS, J., took no part in the consideration or decision of this case.

**8.** Defendants' assertion that the tape would blend in with the metal on the trailer is apparently based on the cross-examination of plaintiff's President Richard Klemer and forklift operator, Clayton McColloy, neither of whom looked at the top of the container or disturbed the tape from the inside. There is no indication in the record that anyone ever saw the outer surface of the tape. Thus, we reject any inference that the outer surface of the tape blended in with the metal top of the container making discovery impossible on reasonable inspection.

Defendants also rely upon the opinion of plaintiff's then president, expressed in a letter he wrote to an insurance company, that the container had been damaged prior to arrival in Norfolk. But in a subsequent letter to an insurance company, apparently based on additional information concerning the short time in which water-damaged wool would deteriorate, plaintiff then president concluded that the damage occurred while the container was in defendants' custody.

**9.** The transcript and briefs reveal some confusion on the part of defendants' counsel concerning the posture of the case when submitted to the district court for decision. After the recross-examination of defendants' sole witness, defendants' counsel dismissed the witness and said: "The defendant (sic) rests." Plaintiff's counsel replied: "The plaintiff has no rebuttal." The court then took the case under advisement, and post-trial briefs were discussed. Plaintiff's counsel then said: "We can consider the case closed and submit it as of January 5th [one month from the date of the trial]." The court replied: "All right." Defendants' counsel's concluding remarks reminded the court that defendants' motion for summary judgment had not yet been decided. Defendants' counsel then observed: "I suppose that if my motion was granted, of course, that would end the matter. Also if that be denied then I would go forth with my further proof of rebutting of the Plaintiff's presumptions * * *" and proceeded to argue that the rainfall statistics already introduced by defendants were "sufficient to rebut whatever presumption the plaintiff had going for it as to the condition of that trailer when it was given to the Norfolk and Western." The district court then ended the proceedings, saying, "All right, the court will take the matter under advisement."

In reversing and ordering entry of judgment in favor of plaintiff, we determine that the case has been tried on its merits, and that as a matter of law defendants' evidence failed to rebut the presumption of liability raised by plaintiff's evidence.