In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 02-1639 and 02-1741

AMERICAN NATIONAL FIRE INSURANCE
COMPANY, as subrogee of TABACALERA
CONTRERAS CIGAR COMPANY,

*Plaintiff-Appellee/*
*Cross-Appellant,*

v.

YELLOW FREIGHT SYSTEMS,
INCORPORATED,

*Defendant-Appellant/*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3622—**Samuel P. King**, *Judge.*

ARGUED OCTOBER 16, 2002—DECIDED APRIL 10, 2003

Before COFFEY, RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* American National Insurance Company ("National Insurance"), as subrogee of Tabacalera Contreras Cigar Company ("Tabacalera"), brought this action under the Carmack Amendment, 49 U.S.C. § 14706, seeking damages from Yellow Freight Systems, Inc. ("Yellow Freight"). It alleged that a shipment of cigars entrusted

to Yellow Freight was damaged in transit. After a bench trial, the district court awarded damages including freight, taxes, fees, insurance and prejudgment interest to National Insurance. Yellow Freight now appeals the district court's rulings that National Insurance made out a prima facie case under the Carmack Amendment, 49 U.S.C. § 14706, that none of the excepted causes under the Carmack Amendment were proven by Yellow Freight, and that the damaged cartons were part of the shipment at issue in the case. Yellow Freight also appeals the district court's award of freight, taxes and insurance. National Insurance cross-appeals the district court's determinations that the date of subrogation rather than the date of delivery of the damaged goods is the date of accrual for prejudgment interest and that prejudgment interest would be simple rather than compound. For the reasons stated in the following opinion, we affirm in part and reverse and remand in part the judgment of the district court.

# I

## BACKGROUND

Tabacalera imports cigars from the Dominican Republic. In April 1998, it imported a shipment of 200,000 cigars contained in 118 cardboard boxes from the Dominican Republic to Dee's Cold Storage in Oconomowoc, Wisconsin. Yellow Freight picked up the shipment in Miami and took it to Wisconsin. When Yellow Freight's driver picked up the shipment in Miami, he noted that some of the cardboard box tops were "set down" or "crunch[ed]," but he did not consider the cartons sufficiently damaged to indicate that any of the cigars were damaged. Trial Tr. at 306, 297. He saw no indication that any of the cartons were wet. He signed a clean bill of lading and loaded the shipment on his truck.

When the shipment was delivered to Tabacalera at Dee's Cold Storage, the top and bottom boxes in the shipment were wet, and many were crushed. Yellow Freight, when informed of the damage, sent an adjuster to investigate and inspect; National Insurance also sent an adjuster. Both adjusters found extensive damage. The report by National Insurance's adjuster inventories the type and lengths of cigars damaged, and also lists cigars of several lengths. In contrast, the original packing list for the 118 carton shipment lists cigars of only two different lengths.

After a bench trial, the district court determined that National Insurance had made out a prima facie case under the Carmack Amendment, which allows a shipper to recover from a carrier for actual loss caused by the carrier. The court further concluded Yellow Freight had failed to rebut the prima facie case because it had not established any of the excepted causes that relieve the carrier of liability under the Carmack Amendment. *See Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964) (explaining that the Carmack Amendment has the effect of "codif[ying] the common-law rule that a carrier . . . is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods" (internal quotation marks and citations omitted)); *see also Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 369 n.2 (7th Cir. 2000). The district court held that National Insurance was entitled to the value of all of the damaged cartons, despite the inconsistency be-

tween the shipping list and adjuster's reports.[1] The court also awarded National Insurance damages for freight, taxes, fees and insurance on the entire shipment. With respect to prejudgment interest, the district court originally awarded National Insurance compound interest from the date Tabacalera received the damaged shipment, but, upon motion by Yellow Freight, the court modified the judgment, awarding simple, rather than compound, prejudgment interest from the date of subrogation, the date National Insurance paid Tabacalera for its loss.

## II

## DISCUSSION

### A.  The District Court's Findings

Yellow Freight contends that several of the district court's determinations cannot stand. Specifically, it challenges the court's determinations (1) that the cigars were delivered to Yellow Freight in good condition; (2) that the prima facie case was not rebutted; and (3) that the damaged cartons were part of the shipment of 118 cartons. Two basic principles must guide our review of these submissions. First, in reviewing a bench trial, the district court's findings of fact "shall not be set aside unless clearly erroneous." Fed. R. Civ. P. 52(a). "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Trust for S. California*, 508 U.S. 602,

---

[1]  Yellow Freight argued that the inconsistency indicated that most of the damaged cartons were not on the 118 carton shipment at issue in the case.

623 (1993) (internal quotation marks omitted). Second, we review legal conclusions de novo. *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1044 (7th Cir. 2002). With these principles in mind, we turn to each of the determinations challenged by Yellow Freight.

### 1. The Condition of the Cigars Upon Delivery

This lawsuit arises under the Carmack Amendment, 49 U.S.C. § 14706, which "provides shippers with the statutory right to recover for actual losses to their property caused by carriers." *Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 369 (7th Cir. 2000). In *Allied Tube*, we noted that:

> Pursuant to this statute . . . the shipper establishes a *prima facie* case when it shows (1) delivery in good condition; (2) arrival in damaged condition; and (3) the amount of damages. Upon such a showing, the burden shifts to the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.

*Id.*

Yellow Freight submits that the district court's finding of "delivery in good condition" should be set aside because the court impermissibly relied on the failure of Yellow Freight's driver to note any exceptions to the bill of lading. Yellow Freight further contends that the bill of lading cannot establish the "good condition" of the cigars because the bill of lading stated that Yellow Freight had received "the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown)." Plaintiff's Ex.3.

Although "a bill of lading, on its own, may not necessarily establish a *prima facie* case that an entire shipment was received in good order," *Allied Tube*, 211 F.3d at 371, a bill of lading is certainly some evidence of that condition. *See id.* Indeed, in its conclusions of law, the district court specifically stated that: "A carrier's bill of lading noting no exceptions (i.e., no indication of damage) regarding the condition of the shipment constitutes some evidence that the shipment was received in good condition." R.35 at 21.

Moreover, a "statement in the bill of lading as to 'apparent good order' [is] prima facie evidence . . . that, as to parts which were open to inspection and visible, the goods were in good order at the point of origin." *Hoover Motor Express Co. v. United States*, 262 F.2d 832, 834 (6th Cir. 1959). In conformity with this principle, the district court found that the cartons (not the cigars themselves) were open to inspection and thus the bill of lading was prima facie evidence that the cartons themselves (but not the contents) were in apparent good order.

In two cases where a bill of lading stated that the shipment was received in "apparent good order, but that the contents and condition" of the cargo itself was unknown, *Faribault Woolen Mill Co. v. Chicago, Rock Island & Pacific Railroad Co.*, 289 N.W.2d 126, 129 (Minn. 1980), and *Reider v. Thompson*, 197 F.2d 158 (5th Cir. 1952), the courts found that

> [w]hen packages are received by the carrier in acknowledged good external condition but are delivered by the carrier in a damaged or stained condition which could reasonably and logically be found to indicate that the discovered damage or deterioration of the contents resulted from the cause indicated by the condition of the external package, theretofore received in good condition, the trier of facts may infer from these

circumstances that damage to the contents was occasioned by the negligence of the carrier in the respect indicated by the changed external condition of the package.

*Reider*, 197 F.2d at 161; *see also Faribault*, 289 N.W.2d at 129 (same). In *Faribault*, the court quoted the *Reider* district court's statement on remand that

"[w]hen a consignment is received by a common carrier in external good order and condition and delivered by it in damaged condition, with the external covering of the goods so damaged as to account for the damage to the contents, the consignee need not prove the internal good order of the goods at the time of receipt by the carrier, and the presumptive liability of the carrier is established."

*Faribault*, 289 N.W.2d at 129 (quoting *Reider v. Thompson*, 116 F. Supp. 297, 280 (E.D. La. 1953)).

Here, there was testimony by the Yellow Freight driver that some of the tops were "set down," but that the containers were dry, that the use of used cardboard boxes is not unusual, and that he did not consider the cartons to be damaged to an extent that would indicate that any of the freight was damaged. *See* Trial Tr. at 306, 294-97. The driver signed a clean bill of lading without noting any problems to the containers.

On the other hand, there was multiple testimony that, when the cartons were delivered to Dee's Cold Storage for Tabacalera, water came out of the trailer, the top and bottom cartons were wet, some of the cartons on the bottom had disintegrated, and many boxes were crushed. *See id.* at 37-8, 193-98, 271.

Given this evidence, and in light of the case law, the district court certainly was entitled to find that the cargo,

damaged upon arrival at its destination, previously had been delivered to Yellow Freight in good condition. National Insurance thus established a prima facie case under the Carmack Amendment.

### 2. Rebuttal Under the Carmack Amendment

Under the Carmack Amendment, after a shipper has made out a prima facie case, "the burden shifts to the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Allied*, 211 F.3d at 369. The excepted causes are "acts of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods." *Id.* at 369-70 n.2.

Yellow Freight submits that the evidence establishes that the damage was caused by "the act of the shipper himself," specifically, by the shipper's improper packaging of the cigars in used cardboard boxes rather than in crates. We believe, however, that the evidence entitled the district court to conclude that an exception to liability on this basis was not available to Yellow Freight. The record shows that Tabacalera had received millions of cigars packaged in the same manner that were undamaged. *See* Trial Tr. at 171-72. Moreover, the damage found by the district court was, to a large extent, water damage. Yet, there was no evidence that the water damage had been caused by packing the cigars in used cardboard boxes. *See* R.35 at 10-11. Rather, the testimony indicated that the water entered "through one of the seams on the left side" of Yellow Freight's truck. *Id.* at 11; Trial Tr. at 196-97.

Even if the used cardboard boxes contributed to the extent of the damage once the cartons were wet, *Allied* re-

quires that, in order to rebut the prima facie case, Yellow Freight also must show that it was not negligent. It cannot make that showing. The water damage was attributable entirely to Yellow Freight's negligence. The district court correctly determined that Yellow Freight had failed to rebut National Insurance's prima facie case.

### 3. Whether The Damaged Cigars Were Part of the Shipment

Yellow Freight next submits that a comparison of the packing list with the inventory compiled by National Insurance's adjuster demonstrates that the cigars in at least 45 of the 59 cartons claimed to be damaged were not part of the 118 carton shipment at issue. The original packing list for the 118 cartons indicates that the cigars packed are of two types with two lengths. The adjuster's recorded inventory of the damaged cigars shows multiple lengths and types of cigars.

Despite this supposed discrepancy, we are not left with a definite and firm conviction that a mistake was made. Yellow Freight simply has not carried the burden of demonstrating that the district court's view of the evidence has no basis in the record. As pointed out by National Insurance, Yellow Freight solicited no evidence to show that the measurements of National Insurance's adjuster were incorrect. Nor did it submit any evidence that the measurements stated on the invoice were correct. Yellow Freight offered no evidence of how the preparer of the bill of lading in the Dominican Republic measured the cigars or recorded the measurements. Indeed, the only testimony concerning the identity of the cigars was from a Mr. Flaxman, who helped with the damage assessment of the cigars. He stated those charged with the task sepa-

rated out the 118 boxes, checked the invoice numbers, and "verified" that the boxes inspected "did, in fact come off that trailer that had the 118 cartons." Trial Tr. at 66.

In summation, the district court committed no error in concluding that the cigars were delivered to Yellow Freight in good condition, that the damage was not caused by the packaging, and that the damaged cigars were part of the 118 carton shipment at issue. Therefore, National Insurance was entitled to recover under the Carmack Amendment.

## B. Award of Taxes, Fees, Freight and Insurance

Yellow Freight submits that the district court erred in awarding National Insurance recovery for taxes, fees, freight charges and insurance for the damaged shipment.

The Carmack Amendment, 49 U.S.C. § 14706, states that it subjects a carrier to "liability . . . for the actual loss or injury to the property." *Id.; see also Allied Tube,* 211 F.3d at 369 (Under the Carmack Amendment, shippers can "recover for actual losses to their property caused by carriers."). As noted by the Fifth Circuit, "[d]espite the apparent statutory limitation to recovery of damage caused to the property itself transported," the Supreme Court "from its earliest interpretation has consistently construed the Amendment" as imposing much more. *Air Prods. & Chems., Inc. v. Illinois Cent. Gulf R.R. Co.,* 721 F.2d 483, 485 (5th Cir. 1983). In the words of the Supreme Court, the Carmack Amendment is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Southeastern Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 29 (1936) (internal quotation marks and citations omitted). Recover-

able damages includes damages for delay, *see id.*, lost profits (unless they are speculative), *see Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 277 (1st Cir. 2000), and all reasonably foreseeable consequential damages, *see Air Prods.*, 721 F.2d at 485.

The Supreme Court's "ordinary measure of damages" in Carmack Amendment cases is meant to put the shipper back in the position it would have been in had the carrier properly performed, including recovery for lost profits:

> [T]he ordinary measure of damages in cases of this sort is the difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive.

*Gulf, Colorado & Santa Fe Ry. Co. v. Texas Packing Co.*, 244 U.S. 31, 37 (1917).[2] When this measure is employed, the shipper is still obligated to pay freight to the carrier and will not be allowed to recover freight in his damages. The reasoning for this rule is straightforward: The price of the freight, as well as all necessary costs to the shipper such as insurance and taxes, will be figured into the market rate at destination. By receiving the market rate of the goods had they been undamaged less the market rate received in their damaged condition, the shipper has received exactly what he would have received had the carrier performed non-negligently.

---

[2] If the shipper had previously entered into a contract to sell the goods, then the contract price rather than the market value at the place of destination is used. *See Gore Prods., Inc. v. Texas & N. O. R. Co.*, 34 So. 2d 418, 421-22 (La. Ct. App. 1948).

This basic rule of damages for cases involving the carriage of goods was explained by Judge Wallace of the Second Circuit:

> Presumably the cost of transportation to the place of destination is an element of the market value of the goods at that place; and when the shipper recovers their market value, or upon the basis of their market value at that place, he obtains full indemnity. As the shipper thus gets the benefit of the transportation, the carrier should not lose the freight.

*The Oneida*, 128 F. 687, 692 (2d Cir. 1904) (Wallace, J., concurring) (joining fully the court's opinion, but writing separately to explain the court's rationale); *see also The M.S. Californian*, 82 F.2d 283, 283 (2d Cir. 1936) (noting that the "sale price"—the market value at destination—"included cost, insurance, and freight").

Although written before the passage of the Carmack Amendment and in the context of admiralty law, Judge Wallace's explanation of why freight should be allowed under some calculations of damages and not under others is helpful. He explained why a shipper should not recover freight when the measure of damages is the "general rule" for cases of goods lost or damaged by the carrier. *The Oneida*, 128 F. at 692 (Wallace, J., concurring). Judge Wallace's "general rule" is the same as that adopted by the Supreme Court for Carmack Amendment cases, namely,

> the carrier is liable to the shipper for [the] market value [of the lost goods] at the point of destination, less the amount of the freight charges due for their transportation; and the same rule applies where the goods are merely damaged, and are delivered in their damaged condition, with the qualification that the value

of the goods in their damaged condition is to be deducted.

*Id.; compare id., with Gulf, Colorado & Santa Fe Ry. Co.*, 244 U.S. at 37 ("[T]he ordinary measure of damages in cases [under the Carmack Amendment] is the difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive.").

However, there are instances when freight may be recovered. The typical case is when the entire shipment is destroyed or useless,[3] but also when the measure of damages used is the shipper's cost (as determined by his cost, the invoice price, or market rate at shipment) less the market rate as damaged. As explained in an annotation on the subject, although freight charges would not be recoverable under "the ordinary damage rule"[4] discussed above, an alternative approach requires another treatment of freight charges:

---

[3] *See Marquette Cement Mfg. Co. v. Louisville & Nashville R.R. Co.*, 406 F.2d 731, 731-32 (6th Cir. 1969); *Contempo Metal Furniture Co. of California v. E. Texas Motor Freight Lines*, 661 F.2d 761, 764 (9th Cir. 1981).

[4] The annotation explains that "the ordinary damage rule . . . measures the recovery by the difference between the market value for sound goods at destination on the date when the goods should have arrived and the actual amount received on sale of the damaged goods, no allowance is made whereby the shipper can recover his freight expense." Annotation, *Validity and Effect of Provision in Carrier's Contract as to Time, Method, or Place of Valuation of Property for Purposes of Determining Amount of Damages*, 83 L. Ed. 867, 879 (1939).

> [T]he rule apparently is that, under bills of lading providing that loss or damage shall be computed at the value or cost of the goods or property at the time and place of shipment, the carrier is not entitled to have the amount of the freight deducted from the value as ascertained under the contract, or, in other words, that the freight, if paid, should be added to the value at the time and place of shipment.

Annotation, *Validity and Effect of Provision in Carrier's Contract as to Time, Method, or Place of Valuation of Property for Purposes of Determining Amount of Damages,* 83 L. Ed. 867, 877 (1939).

The reason for including freight in the measure of damages when the shipper's cost (or the market value at place of shipment) is employed as the starting point is that the Carmack Amendment allows recovery of lost profits under the ordinary measure of damages. When the shipper's costs are used, however, the profit is unknown. We can assume, however, that the shipper at least would have been able to recover in the market at destination his freight, taxes, fees and insurance in addition to the price he paid for the commodity. Thus these items can be recovered (or added to the value) when the measure of damages is the cost to the shipper less the value of the damaged goods.

A rule allowing freight to be recovered when the value is determined by the shipper's cost (or the value at the place of shipment) but not allowing freight to be recovered when value is determined by the market rate if undamaged at destination comports with the Carmack Amendment decisions. For example, in *Pennsylvania Railroad Co. v. Olivit Brothers*, 243 U.S. 574 (1917), the Supreme Court stated:

[I]t was agreed at the trial that the proper measure of damages was to be computed upon the basis of the value of the property *at the place and time of shipment* and that such measure should be read into all of the bills of lading. As plaintiff further says, to recover the damages sustained by it *based upon this value*, plaintiff must receive from defendant the difference between this value and the proceeds of the sale, *and the freight paid*. In this we concur, and therefore there was no error in including in the recovery such freight.

*Id.* at 586 (emphasis added); *Allied Tube*, 211 F.3d at 369 n.1 (noting that the damages were "the cost of the shipment . . . plus Allied's shipping costs . . . minus the shipment's salvage value"); *see also Albion Elevator Co. v. Chicago & N. W. Transp. Co.*, 254 N.W.2d 6, 18 (Iowa 1977) ("[W]here a shipper, as here, receives only the point of shipment value of the lost commodity rather than its destination value, a measure of damages which permits him to recover freight charges paid on the lost portion of the shipment as compensation for his 'full actual loss' is proper.")[5]

---

[5] The case relied on by Yellow Freight for the proposition that the shipper cannot recover freight is not to the contrary. In *W. A. Stackpole Motor Transportation, Inc. v. Malden Spinning & Dyeing Co.*, 263 F.2d 47 (1st Cir. 1958), after espousing the rule that the "ordinary" measure for recovery is the market value of the property undamaged at destination less the market value as damaged, the First Circuit stated that

[n]o clear, fully reasoned authority has been cited to us, nor have we found any, to support the general proposition that the lawful holder of a bill of lading is entitled to prepaid freight in addition to his ordinary damages *as measured above*. Indeed, to allow recovery of prepaid costs of cartage in addition to *damages measured by the 'ordinary'*

(continued...)

In this case, the district court did not use the regular measure, which in and of itself is not problematic. *See*

---

5 (...continued)

> *yardstick as stated above* would more likely than not . . . give the shipper more than recovery for his full actual loss, damage or injury at the expense of the carrier.

*Id.* at 51 (emphasis added and citations omitted). Thus, the case stands merely for the proposition that when damages are measured by the ordinary rule, then recovery of freight should not be allowed. As previously discussed above, this is so because the shipper already received compensation for his freight paid by receiving the market value at destination.

In *W. A. Stackpole*, the First Circuit explained that it was borrowing its rule of no recovery of freight from maritime law, and while it was "not aware of any cases applying this rule of maritime law in cases involving the carriage of goods on land . . . we see no reason why that rule should not apply on land as well as at sea." *Id.* (citing to Judge Learned Hand's statement of the rule in admiralty in *Alcoa Steamship Co. v. United States*, 175 F.2d 661, 663 (2d Cir. 1949)). However, the rule that when damages are computed by the "loss at the value or cost of the property at the place of shipment" then, consequently, "the shipper should not lose the amount paid for freight" has been called "a rule which has long been established in the admiralty courts." *The Oneida*, 128 F. at 691-92; *see also The Asuarca*, 13 F.2d 222, 223 (S.D.N.Y. 1924) ("In consequence of what seems to have long been the law of this circuit, I hold that libelant's damages should be the invoice value of the damaged goods plus the freight paid thereon"); *Anchor Line v. Jackson*, 9 F.2d 543, 545 (2d Cir. 1925) (Judge Learned Hand noting that normally when invoice price is the measure, prepaid freight "becomes part of the value" recoverable; but not allowing recovery of freight because of a contractual provision disallowing recovery in the bill of lading).

*Illinois Cent. Ry. Co. v. Crail*, 281 U.S. 57, 64 (1930).[6] Had the regular measure been used, National Insurance would have paid freight but would have received the market value of the entire shipment of cigars undamaged in Wisconsin less the market value of the cigars that were salvageable in Wisconsin. National Insurance would thus have recovered the freight, taxes, insurance and fees for the cigars that were destroyed, but would have still paid freight, etc., for those cigars that were salvageable.

If National Insurance had received the market value of the entire shipment at the place of shipment plus the entire freight paid less the market value of the salvageable cigars in Wisconsin, then National Insurance would have recovered its freight on the cigars that were not salvageable, but would have paid for the freight of the cigars that were salvageable because the freight and other charges would have been figured into the market value of the cigars as damaged in Wisconsin.[7]

---

[6]  The Supreme Court stated:

> There is no greater inconvenience in the application of the one standard of value than the other and we perceive no advantage to be gained from an adherence to a rigid uniformity, which would justify sacrificing the reason of the rule, to its letter. The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to if, for special reasons, it is not exact or otherwise not applicable.

*Illinois Cent. R.R. Co. v. Crail*, 281 U.S. 57, 64-65 (1930).

[7]  The other measure commonly used is the replacement cost of the damaged goods to the shipper—particularly when the shipper has not lost a sale, but was able to timely purchase replacements. *See Oak Hall Cap & Gown Co. v. Old Dominion*

(continued...)

The district court followed neither of these well-trodden paths. Rather, it awarded National Insurance the cost to the shipper of the cigars destroyed or damaged. Of the original shipment of 200,000 cigars, for which the shipper paid two dollars per cigar, or $400,000, the district court found that 110,206.5 cigars were damaged or destroyed. It thus awarded damages for the cost to the shipper of the damaged cigars of $220,413. Additionally, it awarded taxes, broker's fees, freight and insurance paid for the entire 200,000 cigar shipment for a total of $8,841. Under this award, National Insurance recovers the freight and charges for the near 90,000 cigars that were not damaged.[8] Although the shipper can recover "all damages resulting from" the carrier's negligence, *Pastime Amusement*, 299 U.S. at 29, the shipper cannot recover more than "the injury suffered." *Crail*, 281 U.S. at 63.

We believe that existing precedent on the measure of damages requires that National Insurance be allowed

---

[7]  (...continued)
*Freight Line, Inc.*, 899 F.2d 291, 296 (4th Cir. 1990); *American Tele. & Tele., Inc. v. Con-Way S. Express, Inc.*, No. C-95-1472 BZ, 1996 WL 24763, at *2 (N.D. Cal. Jan. 17, 1996); *see also Project Hope v. M/V IBN SINA*, 250 F.3d 67, 77 (2d Cir. 2001) (admiralty case). This measure is appropriate because the freight and charges for the replacement are included in the price of the replacement and thus in the damages. Thus the shipper is put back in the position he would have been in had the carrier been non-negligent. Additionally, he pays for the freight and other charges for the portion of the original shipment that is not damaged.

[8]  When these cigars are eventually sold, the shipper will recover for a second time the cost of the freight and charges for the 90,000 good cigars because that will be calculated into the price.

to recover the freight, taxes, fees and insurance only for the portion (55.1%) of the shipment of cigars that was damaged. *See Albion Elevator*, 254 N.W.2d at 18 (finding that permitting shipper "to recover freight charges paid *on the lost portion* of the shipment" was necessary to compensate him for the "full actual loss" where he received "only the point of shipment value of the lost commodity" (emphasis added)).

## C. Date from which Prejudgment Interest Accrues

The district court awarded prejudgment interest to National Insurance, accruing from the date that National Insurance paid Tabacalera. National Insurance cross-appeals and submits that, as the subrogee, it is entitled to prejudgment interest from the date of the injury to Tabacalera.

The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately. It is designed to ensure that a party is fully compensated for its loss. *See City of Milwaukee v. Cement Div. Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995); *Reyes-Mata v. IBP, Inc.*, 299 F.3d 504, 508 (5th Cir. 2002). Consequently, prejudgment interest typically accrues from the date of the loss or from the date on which the claim accrued. *See West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987); *Guides Ltd. v. Yarmouth Group Prop. Mgmt.*, 295 F.3d 1065 (10th Cir. 2002). If Tabacalera, the insured, had been litigating this claim, it would have received prejudgment interest from the date that its injury occurred, the date that it received the damaged cigars. *See, e.g., Searle Chems. Inc. v. Earl C. Smith, Inc.*, No. 81 C 6789, 1985 WL 2268, at *1 (N.D. Ill. Aug. 7, 1985) (awarding prejudgment interest in case arising under Carmack Amendment from "the date of the loss"). National Insurance submits

that it also is entitled to prejudgment interest from the date of the delivery of the cigar shipment because Tabacalera suffered injury on that date and, as the insurer, National Insurance has the same rights as Tabacalera.

It is settled that, as a general rule, an insurer steps into the shoes of the insured and "acquires no greater or lesser rights than those of the insured." *Westchester Fire Ins. Co. v. Gen. Star Indem. Co.*, 183 F.3d 578, 583 (7th Cir. 1999); *Am. Nat'l Bank & Trust Co. of Chi. v. Weyerhaeuser Co.*, 692 F.2d 455, 461 (7th Cir. 1982). However, there is a limitation on the rights of a subrogee that must be taken into account: The right of subrogation is generally one of indemnification; consequently, a subrogee "is entitled to indemnity to the extent only of the money actually paid by him to discharge the obligation . . . or the value of the property applied for that purpose." *Maryland Cas. Co. v. Brown*, 321 F. Supp. 309, 312 (N.D. Ga. 1971); *see Milan v. Kausch*, 194 F.2d 263, 265 (6th Cir. 1952) ("It is the general rule in subrogation that the subrogee is to be reimbursed only to the extent of the amounts paid in discharge of the obligation assumed by the subrogee."); *Lexington Ins. Co. v. Baltimore Gas & Elec. Co.*, 979 F. Supp. 360, 362 (D. Md. 1997); *Utica Mut. Ins. Co. v. Denwat Corp.*, 778 F. Supp. 592, 594 (D. Conn. 1991) (noting that under "traditional principles" subrogee action "is truly one of indemnification"); *see also* 16 Couch on Insurance 3d § 223:85 (2000); 83 C.J.S. Subrogation § 66, at 613 (2000) (stating that "subrogation is limited to indemnification or reimbursement"); 46A C.J.S. Insurance § 1500 (1993); 73 Am. Jur. 2d Subrogation § 67, at 599 (2001).

For example, in applying this rule, several courts have disallowed payment of punitive damages to the subrogee insurance companies, even though the subrogor could have received such damages. *See Utica Mut. Ins. Co.*, 778

F. Supp. at 594; *Colo. Farm Bureau Mut. Ins. Co. v. CAT Cont'l*, 649 F. Supp. 49, 52 (D. Colo. 1986); *Maryland Cas. Co.*, 321 F. Supp. at 312.[9] In a similar vein, but often without explaining their rationale, several state courts have allowed prejudgment interest from the date of payment by the insurance company, rather than from the date of the insured's injury. *See Traveler's Indem. Co. v. Ingebretsen*, 38 Cal.

---

[9]    Applying Mississippi law, a federal district court has ruled that, under the rule that subrogation is limited to indemnity, a subrogee was entitled to recover neither punitive damages nor any prejudgment interest. *See Employers Ins. of Wausau v. Dunaway*, 626 F. Supp. 1144, 1146 (S.D. Miss. 1986). Similarly, without comment, the Supreme Court of Colorado reversed an award of prejudgment interest to a subrogee. *See Otis Elevator Co. v. Maryland Cas. Co.*, 33 P.2d 974, 978 (Colo. 1934); *see also* 46A C.J.S. Insurance § 1500, at 409 (1993) ("The right of the insurance company to recover interest on the amounts to which it is entitled has been recognized, and also denied.").

We cannot accept the view of these courts that a subrogee cannot receive any prejudgment interest at all. The purpose of prejudgment interest is to compensate the injured party; and prejudgment interest is to accrue from the time of the injury. The insurance company has been deprived of the use of its money from the time that it paid the insured; it has suffered an injury because of the wrongdoing of a third party. A district court does not abuse its discretion by awarding prejudgment interest to a subrogee on an award against a third party beginning from the time of the insurance company's payment to the insured. Several courts have made such awards. *See Traveler's Indem. Co. v. Ingebretsen*, 38 Cal. App. 3d 858, 862-63 & n.4, 870 (Cal. Ct. App. 1974); *Neitlich v. Amica Mut. Ins. Co.*, 389 N.E.2d 1017, 1019 (Mass. App. Ct. 1979); *Texarkana & Ft. S. Ry. Co. v. Hartford Ins. Co.*, 44 S.W. 533, 533-35 (Tex. Civ. App. 1897); *see also* John Alan Appleman & Jean Appleman, Insurance Law & Practice § 4103, at 389 (1972).

App. 3d 858, 862-63 & n.4, 870 (Cal. Ct. App. 1974); *Neitlich v. Amica Mut. Ins. Co.*, 389 N.E.2d 1017, 1019 (Mass. App. Ct. 1979); *Texarkana & Ft. S. Ry. Co. v. Hartford Ins. Co.*, 44 S.W. 533, 533-35 (Tex. Civ. App. 1897); *see also* John Alan Appleman & Jean Appleman, Insurance Law & Practice § 4103, at 389 (1972) ("An insurer recovering from a third party wrongdoer has been held to be entitled to interest upon the amount of the loss paid *from the time of payment.*" (emphasis added)).

National Insurance paid for the property damage to the cigars caused by Yellow Freight. It does not appear that it paid for Tabacalera's loss of its use of money from the time of the damaged shipment until the time of the insurance payment. Because National Insurance, as subrogee, is only entitled to indemnity for its payment to Tabacalera, we believe that the district court did not err in computing prejudgment interest from the date that National Insurance paid Tabacalera's claim.[10]

---

[10] In *Herbert Rosenthal Jewelry Corp. v. St. Paul Fire & Marine Ins. Co.*, 21 A.D.2d 160 (N.Y. App. Div. 1964), the trial court awarded prejudgment interest to the insurer on the value of the property for which the insurer had paid, accruing from the date of the burglary (November 21, 1956) rather than from the date that the insurance company made its payment (January 3, 1957). *See id.* at 168-69 (McNally, J., dissenting). The majority explicitly stated that the insurer had paid the insured "shortly after the loss occurred." *Id.* at 162. The majority explained that it was allowing the insurer to keep the prejudgment interest (rather than giving it to the insured, who was party to the action) because (1) the insurer had been deprived of the money after paying it to the insured and (2) the insured "has had its money all this time," *id.* at 166, that is, the "insured has had the principal sum all these years, and the interest

(continued...)

### D.  Simple Prejudgment Interest

On cross-appeal, National Insurance also submits that the district court erred in awarding simple rather than compound prejudgment interest.

As a general rule, the decision whether to award compound or simple prejudgment interest is left to the discretion of the trial court. *See Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 437 (7th Cir. 1989); *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1098 (6th Cir. 1996) (holding in ADEA action that district court did not abuse its discretion by awarding compound rather than simple prejudgment interest); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) (holding in patent litigation that district court did not abuse its discretion by awarding simple rather than compound prejudgment interest). Nevertheless, noting that " '[p]rejudgment interest is an element of complete compensation,' " we have stated that "compound prejudgment interest is the norm in federal litigation." *In re Oil Spill by the Amoco Cadiz Off*

---

[10] (...continued)
would compensate it for nothing it has lost," *id.* at 162. The majority found that the insurer was entitled to the entire prejudgment interest amount; and that the insured was entitled to none. *See id.* at 161-62, 168. The dissent argued that the insurer should be entitled to no prejudgment interest under the terms of the subrogation agreement and that the insured should receive it all. *See id.* at 219-20 (McNally, J., dissenting). To the extent that the result in this case is inconsistent with the course we follow today, we believe that the approach followed in *Traveler's Indemnity Co. v. Ingebretsen*, 38 Cal. App. 3d 858, 862-63 & n.4, 870 (Cal. Ct. App. 1974), is more consistent with the weight of authority and more compatible with the purposes of prejudgment interest.

*the Coast of France on March 16, 1978,* 954 F.2d 1279, 1331 & 1332 (7th Cir. 1992) (quoting *West Virginia v. United States,* 479 U.S. 305, 310 (1987)).

The district court originally awarded National Insurance compound prejudgment interest. *See* R.35 at 28. Yellow Freight then moved for a modification of the judgment. *See* R.43. Without explanation, the district court "[i]n an exercise of its discretion" modified its award, "award[ing] simple interest (not compound interest)." R.49 at 2.

We believe that, absent special circumstances, compound, not simple, interest ought to be awarded in Carmack Amendment cases. As we stated in *Amoco Cadiz,* compound interest ought to be the *norm* in federal matters, and we see no reason why this approach ought not govern in Carmack Amendment cases. Indeed, because "the purpose of the Carmack Amendment is to compensate shippers whose goods are damaged while in the possession of a carrier," *Oscar Mayer Foods Corp. v. Pruitt,* 867 F. Supp. 322, 328 (D. Md. 1994), compound interest seems particularly appropriate. Compound interest generally more fully compensates a plaintiff and so comports with the purpose of the Carmack Amendment.

Under these circumstances, we cannot allow the award of simple interest to stand without an explanation from the district court. Because the district court did not explain its reasoning for changing the award to simple interest, we do not know why it believed that simple interest is appropriate here. Our unease is particularly great because the only reason given by Yellow Freight during its argument to the district court was that it should be required to pay only simple prejudgment interest because "the traditional, common-law rule is that prejudgment interest is not compounded." R.43 at 2 (citing the Restatement (Second) of Contracts § 354 cmt. a (1981)). If the district

court *sub silentio* based its decision on this argument, it committed legal error. We do not think that our decision in *Amoco Cadiz* can be read as permitting such a rationale to govern in a case based on a federal cause of action. *Cf. Bio-Rad Lab, Inc. v. Nicolet Inst. Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (reversing and remanding where district court relied on inadequate and erroneous reasons for uncompounded low-rate award of interest); *Dynamics Corp. of America v. United States*, 766 F.2d 518, 520 (Fed. Cir. 1985) (reversing and remanding award of simple interest where rationale was that simple interest was "traditional" even though there was no clear precedent that delay damages could not include compound interest). Accordingly, the district court must revisit this issue and either award compound interest or explain why a deviation from the norm is appropriate.[11]

---

[11] In so holding, we explicitly decline National Insurance's invitation to adopt a general rule that "district courts should compound prejudgment interest." Brief of National Insurance at 41 (citing *American Tele. & Tele. Co. v. Intrend Ropes & Twine*, No. 93-2266, 1996 U.S. Dist. LEXIS 16991, at *1 (C.D. Ill. March 20, 1996)). In *Intrend Ropes*, the district court stated that "the Seventh Circuit has further instructed that district courts should compound the interest." 1996 U.S. Dist. LEXIS 16991, at *48. The statement in *Intrend Ropes* is inaccurate in that it is too broad. Our statement in *In re Oil Spill by the Amoco Cadiz Off the Coast of France on March 16, 1978*, 954 F.2d 1279, 1332 (7th Cir. 1992), is limited in that it only discusses awards arising under federal law and it is a statement of the "norm," not of the rule. Agreeing with the Federal Circuit in *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995), we refuse to adopt a rule that "prejudgment interest must be compounded as a matter of law." 56 F.3d at 1555. The Federal Circuit explained that "the determination whether to award simple or

(continued...)

## Conclusion

For the foregoing reasons, we affirm the district court's decision as to all matters except the award of freight, taxes, insurance and fees, and the award of simple rather than compound interest. National Insurance is only entitled to recovery for freight, taxes, fees and insurance for the portion of the shipment that was damaged. Furthermore, on remand, the district court must explain its rationale for changing its award from compound to simple interest or, in light of this opinion, award compound interest to National Insurance from the day it paid the claim and became subrogated to its insured's cause of action against Yellow Freight. National Insurance may recover its costs of this appeal.

AFFIRMED in part, REVERSED in part,
and REMANDED

---

[11] (...continued)
compound interest is a matter largely within the discretion of the district court" and "Rite-Hite has not persuaded us that the court abused its discretion in awarding interest at a simple rate." *Id.* However, we do believe that, at least in a federal question case, a district court must explain why it believes it appropriate to deviate from the norm of compound interest, the measure that most completely fulfills the purpose of prejudgment interest of ensuring "complete compensation." *West Virginia v. United States*, 479 U.S. 305, 310 (1987). There well may be countervailing considerations in a particular case that would make compound interest, or even any interest, inappropriate. For instance, if the prevailing party has caused unreasonable delay in the proceedings and thus artificially delayed the rendition of judgment, a district court might be well within its discretion to deny interest or to deny at least compound interest for some of the period before rendition of judgment.

A true Copy:

      Teste:

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*